Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/23/2025 09:09 AM CDT

Bryan Hauxwell and Ami Hauxwell, appellees,
v. Middle Republican Natural Resources
District et al., appellants.

___ N.W.3d ___

Filed May 23, 2025.    No. S-23-751.

1. **Jurisdiction: Appeal and Error.** A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.

2. **Administrative Law: Judgments: Appeal and Error.** A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record.

3. **____: ____: ____.** When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

4. **Judgments: Appeal and Error.** An appellate court, in reviewing a district court's judgment for errors appearing on the record, will not substitute its factual findings for those of the district court where competent evidence supports those findings.

5. **Constitutional Law: Due Process.** The determination of whether the procedures afforded to an individual comport with the constitutional requirements for procedural due process presents a question of law.

6. **Judgments: Appeal and Error.** An appellate court independently reviews questions of law decided by a lower court.

7. **Jurisdiction: Appeal and Error.** Where a lower court lacks subject matter jurisdiction to adjudicate the merits of a claim, issue, or question, an appellate court also lacks the power to determine the merits of the claim, issue, or question presented to the lower court.

8. **Administrative Law: Natural Resources Districts: Words and Phrases.** A natural resources district is not an agency within the meaning of the Administrative Procedure Act.

9. **Administrative Law: Waters: Natural Resources Districts: Appeal and Error.** Any person aggrieved by an order of a natural resources district issued pursuant to the Nebraska Ground Water Management and Protection Act may appeal the order, and the appeal shall be in accordance with the Administrative Procedure Act.

10. **Jurisdiction: Final Orders: Appeal and Error.** For an appellate court to acquire jurisdiction of an appeal, the party must be appealing from a final order or a judgment.

11. **Final Orders: Appeal and Error.** To be a final order under the first category of Neb. Rev. Stat. § 25-1902 (Cum. Supp. 2024), the order must dispose of the whole merits of the case and leave nothing for the court's further consideration.

12. **Final Orders.** Finality serves the important purpose of promoting efficient judicial administration and preventing piecemeal litigation.

13. **Due Process: Trial.** A fair trial in a fair tribunal is a basic requirement of due process.

14. **Administrative Law: Due Process.** A party appearing in an adjudication hearing before an agency or tribunal is entitled to due process protections similar to those given litigants in a judicial proceeding; this includes the right to a hearing before an impartial, unbiased decisionmaker.

15. **Constitutional Law: Administrative Law: Judges.** Rather than inquiring into whether the judge or adjudicator is actually, subjectively biased, the question is whether the average judge in his or her position is likely to be neutral, or whether there is an unconstitutional potential for bias.

16. **Administrative Law.** Central to whether the average administrative decisionmaker in a similar position is likely to be neutral is the extent of separation between the investigative, prosecutorial, and adjudicative roles in the case.

17. **Criminal Law: Administrative Law: Due Process.** In a criminal trial, due process requires the strict separation of investigative, prosecutorial, and adjudicative functions; in an administrative proceeding, due process requires an adequate separation of investigative, prosecutorial, and adjudicative roles.

18. **Administrative Law: Presumptions.** Decisionmakers are accorded a presumption of honesty and integrity, and of being qualified, unbiased, and unprejudiced; administrative adjudicators serve with the same presumption.

19. **Administrative Law: Prosecuting Attorneys.** An administrative prosecutor or advocate, by definition, is partisan for a particular client or point of view.

20. **Constitutional Law: Prosecuting Attorneys.** Generally, the role of prosecutor is inconsistent with true objectivity, a constitutionally necessary characteristic of an adjudicator.

Appeal from the District Court for Frontier County: James E. Doyle IV, Judge. Reversed and remanded with directions.

Jeffrey M. Cox, of Dier, Osborn & Cox, P.C., L.L.O., and Todd R. McWha, of Waite & McWha, for appellants.

George G. Vinton for appellees.

Funke, C.J., Miller-Lerman, Cassel, Stacy, Papik, and Freudenberg, JJ.

Funke, C.J.

## I. INTRODUCTION

This appeal raises the question of whether a violation of the appellees' due process rights at a prior hearing before the board of directors of a natural resources district tainted subsequent hearings. The district court found that the earlier due process violation infected the later hearings and, therefore, reversed and vacated the penalties that the natural resources district had imposed on the appellees. We disagree. As such, we reverse the order of the district court and remand the cause to the district court with directions as indicated below.

## II. BACKGROUND

### 1. Factual Background

The appellees, Bryan Hauxwell and Ami Hauxwell, are farmers who use ground water and surface water to irrigate properties located within the Middle Republican Natural Resources District. Some of those properties are owned by the Hauxwells. Other properties are owned by Ruggles Farms, Inc., a corporation owned by the Hauxwells. Yet other properties are owned by third parties.

Since 2020, the Hauxwells have been involved in a dispute with the Middle Republican Natural Resources District,

its chairperson, and its general manager (collectively NRD) about the Hauxwells' irrigation practices and the NRD's response to those practices. The dispute has spawned seven separate lawsuits. Those lawsuits are described below only to the extent necessary to understand the parties' arguments on appeal. Where relevant, other information is discussed later in the opinion.

### 2. NRD Board's 2020 Findings and Conclusions and Subsequent Petition for Review

In April 2020, the NRD received a complaint about the Hauxwells. The NRD investigated and allegedly found "numerous direct violations" of the NRD's rules and regulations, including the use of ground water to irrigate acres that had not been certified for irrigation, failure to install flowmeters on regulated wells, and utilization of flowmeters that were not working or permanently mounted. The NRD notified the Hauxwells of its intent to issue a cease-and-desist order and penalties. The notice also informed the Hauxwells of their right to a hearing.

After this notice was sent, but before the hearing, the NRD's general manager and its board members exchanged emails about the alleged violations and potential penalties. In one email, a board member stated that Bryan "evidently doesn't think the rules apply to him" and proposed that the Hauxwells "permanently lose their [ground water] allocation," among other things. In other emails, the general manager opined that the Hauxwells "[were] not trying or thinking about the rules," while a board member expressed a desire to "squash" the Hauxwells.

On August 17, 2020, the board held a hearing on the Hauxwells' alleged violations. The NRD's general manager testified as to the violations. In his own testimony, Bryan did not appear to contest that the Hauxwells had engaged in the practices described. However, Bryan testified that he "didn't think there was a problem with moving water from one place

to the other" if there was a "pooling agreement," or an agreement to share ground water allocations over jointly farmed properties. Bryan said he was unaware that the NRD had not approved the Hauxwells' pooling request. Bryan also said he believed that during its inspections, the NRD would discover and address any issues with meters or seals that were on the wells of the properties he farmed. Ami testified similarly to Bryan that she believed they had "extra water" available due to pooling. Ami said she assumed their pooling agreement was approved because she "hadn't heard that it was not."

The board went into closed executive session to deliberate. The NRD's general manager and its counsel who had prosecuted the case against the Hauxwells "sat in" on the board's deliberations. At the conclusion of deliberations, the board found that the Hauxwells had violated the NRD's rules and regulations. Among other things, the board ordered the Hauxwells to cease and desist irrigating acres that were not certified with the NRD for ground water use. The board indicated that failure to comply with the order could be enforced by an injunction and civil penalties under Neb. Rev. Stat. § 46-745 (Reissue 2021). Also, as a penalty, the board imposed restrictions on the Hauxwells' use of ground water for irrigation.

The Hauxwells then filed a petition for review in the district court for Frontier County, Nebraska, challenging the board's findings and conclusions on various grounds. Among those grounds were the NRD's alleged failure to comply with its own rules and regulations regarding the enforcement of violations and its failure to give the Hauxwells sufficient notice of the hearing.

The district court ruled in favor of the Hauxwells. In so doing, the court found that the NRD had failed to comply with specific rules and regulations that "benefit[ed] and provide[d] safeguards to regulated users," like the Hauxwells, by giving them an opportunity to remedy alleged violations without a cease-and-desist order and in a manner that potentially avoided penalties. The court also found that the Hauxwells

were not provided with adequate notice of the charges against them or the potential penalties. The court thus remanded the cause to the NRD with instructions to "proceed on the alleged violations in accordance with the due process requirements discussed [in the court order] or to dismiss the alleged violations."

### 3. NRD BOARD'S 2021 FINDINGS AND CONCLUSIONS AND SUBSEQUENT PETITION FOR REVIEW

On June 3, 2021, a month after the district court remanded the matter back to the board on the issue of its 2020 findings and conclusions, the NRD purportedly "start[ed] anew"[1] by sending the Hauxwells another "Complaint and Notice of Intent to Issue a Cease and Desist Order." However, the complaint involved the same violations that were addressed at the 2020 hearing.

Subsequently, on July 26, 2021, the NRD informed the Hauxwells that ground water had been pumped on property the Hauxwells leased from another landowner in violation of a cease-and-desist order issued in a separate matter. The NRD indicated that it had decided, at that time, not to pursue the "legal remedies available to it" to secure compliance with the cease-and-desist order, but it left open the option of doing so in response to future violations.

Three days later, on July 29, 2021, the board conducted a hearing on the June 3 complaint and notice of intent to issue a cease-and-desist order. The NRD's general manager once more testified about the Hauxwells' alleged violations, although he acknowledged that at least some violations had been "resolved." The Hauxwells testified similarly that they corrected the violations once they were notified of the issue.

Notably, at one point during the hearing, the Hauxwells asked the NRD's general manager whether he and the NRD's counsel were "going to participate" in the board's deliberations

---

[1] Reply brief for appellants at 10.

"again today." The general manager said that neither he nor counsel would "participate" or "sit in" on the deliberations. Instead, the general manager said that the hearing officer would serve as the board's counsel during its deliberations. When the Hauxwells then asked why the change was made, the hearing officer interjected that it was "[his] decision to exclude" the NRD's counsel and staff from the board's deliberations "in order to keep . . . distance between them and the [b]oard who will be solely responsible for the decision." The hearing officer added that he viewed this as "part of the due process that [the Hauxwells were] entitled to."

Subsequently, on August 10, 2021, the board found that the Hauxwells had violated the NRD's rules and regulations and participated in a violation of the cease-and-desist order as to the other landowner's property. Because there were not, at that time, any continuing violations, the board concluded that no new cease-and-desist order was warranted. However, the board indicated that penalties for the violations would be considered "at a separate hearing" to be "scheduled in due course."

The Hauxwells then filed another petition for review in the district court, asking that the board's 2021 findings and conclusions be reversed and vacated on multiple grounds. One ground was that the participation of the NRD's counsel and general manager in the board's deliberations after the 2020 hearing had "tainted" the 2021 hearing.

The district court dismissed the petition. In so doing, the court distinguished between what it characterized as the Hauxwells' violations of the NRD's rules and regulations prior to 2021 and their participation in the violation of the cease-and-desist order in 2021. As to the pre-2021 violations, the court reasoned that the NRD "took no further action" and did not enter a cease-and-desist order. Accordingly, the court concluded that the Hauxwells failed to present a justiciable issue because "no existing rights of [theirs] were or are affected." As to the 2021 incident, the court similarly reasoned that the

board's findings and conclusions were not a final, appealable order because they "left the determination of a penalty for further consideration."

The Hauxwells did not appeal the district court's decision dismissing their challenge to the 2021 findings and conclusions.

### 4. NRD Board's 2022 Findings and Conclusions and Present Petition for Review

On August 24, 2022, the board heard evidence regarding the penalties for the violations that it found at the 2021 hearing. The NRD's general manager testified that the rule violations at issue were "serious violations." The general manager also testified that he did not view the letter that the NRD sent to the Hauxwells regarding the violation of the cease-and-desist order as to the other landowner's property to preclude the NRD from imposing penalties in the future. But the general manager acknowledged that the "only rules [violations] at issue [were] those rules [violations] addressed at the . . . 2020 hearing" and that "absolutely no other rule violations [were] at issue." The general manager also acknowledged that approximately 10 of the board members at the 2022 hearing had been on the board at the time of the 2020 hearing.

The Hauxwells did not testify at the hearing, but they presented evidence and arguments. Among the evidence presented were the complete records of their prior lawsuits challenging the board's 2020 and 2021 findings and conclusions.

At the conclusion of the hearing, the board again found that the Hauxwells had violated the NRD's rules and regulations and participated in a violation of the cease-and-desist order. Based on those findings, as a penalty, the board restricted the Hauxwells' use of ground water for irrigation and their ability to engage in pooling, among other things.

The Hauxwells then filed yet another petition for review in the district court, challenging the board's 2022 findings and conclusions on multiple grounds. One ground was that the "participat[ion]" of the NRD's counsel and general manager in

the board's deliberations after the 2020 hearing had "taint[ed]" the deliberations after the 2021 hearing and "cause[d] the . . . [b]oard not to be impartial."

The district court agreed with the Hauxwells, reversing the NRD's 2022 findings and conclusions and vacating the assessed penalties. The court began by noting that it had reviewed de novo each of the Hauxwells' "20 separate claims," as well as the record pertaining to each claim. However, the court indicated that it found the Hauxwells' due process claim to be "dispositive" and that it focused on that claim without determining the merits of the other claims.

Specifically, as to the Hauxwells' due process claim, the district court found that

> the improper participation by the prosecutors in the July 29, 2021 deliberations carried over to and spread through the August 24, 2022 hearing.
>
> . . . .
>
> By combining the advocacy and prosecutorial roles with the decision-making function, [the NRD] attorney and manager nullified the presumption of neutrality and impartiality accorded the tribunal and interjected the ex parte advocacy and prosecutorial influences of the agents of the accusers into the decision-making, and in doing so, violated the [Hauxwells'] due process rights. The result produced from the July 29, 2021 hearing was then transmitted to and became the foundation and basis for the decisions in the August 24, 2022 hearing.

Here and elsewhere in its order, the court incorrectly stated that the NRD's counsel and general manager participated in the board's deliberations after the 2021 hearing. In fact, such participation occurred after the 2020 hearing.

The NRD timely appealed the district court's decision, and we moved the matter to our docket.[2]

---

[2] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2024).

## III. ASSIGNMENTS OF ERROR

The NRD assigns, restated and reordered, that the district court erred in (1) exercising jurisdiction over the board's findings that the Hauxwells violated the NRD's rules and regulations and the Nebraska Ground Water Management and Protection Act (NGWMPA),[3] (2) reversing and vacating the penalties against Ruggles Farms, (3) finding that the NRD's counsel and general manager were included in the board's decisionmaking process at the 2021 hearing, (4) finding that the opportunity for a hearing provided to the Hauxwells did not comport with due process, (5) failing to review the board's decision de novo on the record, (6) failing to make independent factual determinations and reach independent conclusions regarding the Hauxwells' violations and the penalties for such violations, (7) failing to find that the Hauxwells violated the NRD's rules and regulations and the NGWMPA, (8) failing to approve the board's order imposing penalties for the Hauxwells' violations, and (9) reversing and vacating the penalties imposed on the Hauxwells.

## IV. STANDARD OF REVIEW

[1] A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.[4]

[2-4] A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act (APA)[5] may be reversed, vacated, or modified by an appellate court for errors appearing on the record.[6] When reviewing an order of a district court under the APA for errors appearing on the record, the inquiry is whether the decision

---

[3] Neb. Rev. Stat. §§ 46-701 to 46-756 (Reissue 2021).

[4] *Dylan H. v. Brooke C.*, 317 Neb. 264, 9 N.W.3d 439 (2024).

[5] See Neb. Rev. Stat. §§ 84-901 to 84-920 (Reissue 2024).

[6] *Uhrich & Brown Ltd. Part. v. Middle Republican NRD*, 315 Neb. 596, 998 N.W.2d 41 (2023).

conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[7] An appellate court, in reviewing a district court's judgment for errors appearing on the record, will not substitute its factual findings for those of the district court where competent evidence supports those findings.[8]

[5,6] The determination of whether the procedures afforded to an individual comport with the constitutional requirements for procedural due process presents a question of law.[9] An appellate court independently reviews questions of law decided by a lower court.[10]

## V. ANALYSIS

### 1. JURISDICTION

[7] Before we can reach the legal issues presented for review, we must first address several jurisdictional issues raised by the parties.[11] The Hauxwells challenge the district court's jurisdiction over the entire matter. The NRD, in turn, challenges the district court's jurisdiction over the board's 2021 findings and conclusions that the Hauxwells violated the NRD's rules and regulations and the NGWMPA and over the penalties imposed as to Ruggles Farms. Where a lower court lacks subject matter jurisdiction to adjudicate the merits of a claim, issue, or question, an appellate court also lacks the power to determine the merits of the claim, issue, or question presented to the lower court.[12] However, for the reasons set forth below, we reject the parties' challenges to our jurisdiction.

---

[7] *Id.*

[8] *Id.*

[9] *In re Interest of Jordon B.*, 316 Neb. 974, 7 N.W.3d 894 (2024).

[10] *Id.*

[11] See, e.g., *State ex rel. Constance v. Evnen*, 317 Neb. 600, 10 N.W.3d 763 (2024).

[12] E.g., *Charter West Bank v. Riddle*, 314 Neb. 263, 989 N.W.2d 428 (2023).

### (a) NRD's Failure to File 2021 and 2022 Findings and Conclusions With Court Did Not Deprive Court of Jurisdiction

The Hauxwells' argument that we lack jurisdiction over this matter in its entirety is based on their view that the NRD's 2021 and 2022 findings and conclusions were part of the same proceeding as the 2020 findings and conclusions. The Hauxwells claim that because the district court remanded the proceeding involving the 2020 findings and conclusions to the NRD, the NRD was required under § 84-917(5)(b)(ii) of the APA to file its 2021 and 2022 findings and conclusions with the district court. Insofar as the NRD failed to do this, the Hauxwells argue that we lack jurisdiction over the appeal. The NRD, on the other hand, argues that the 2021 and 2022 findings and conclusions involved a separate proceeding and that, as such, it had no obligation to file them with the district court.

Ultimately, we need not resolve the question of whether one proceeding or multiple proceedings were involved here. This is because even if the 2021 and 2022 findings and conclusions were part of the same proceeding as the 2020 findings and conclusions, as the Hauxwells argue, the filing requirements upon which they rely cannot be seen to apply here. To explain why this is the case, we briefly review the relevant statutes.

[8,9] Section 84-917 of the APA prescribes, in relevant part, that when a court reviews an agency decision:

(5)(a) . . . The court may affirm, reverse, or modify the decision of the agency or remand the case for further proceedings.

(b)(i) If the court determines that the interest of justice would be served by the resolution of any other issue not raised before the agency, the court may remand the case to the agency for further proceedings.

(ii) The agency shall affirm, modify, or reverse its findings and decision in the case by reason of the additional

proceedings and shall file the decision following remand with the reviewing court.

A natural resources district is not an agency within the meaning of the APA.[13] However, under the NGWMPA, any person aggrieved by an order of a natural resources district issued pursuant to the NGWMPA may appeal the order, and the appeal shall be in accordance with the APA.[14]

The Hauxwells do not, as an initial matter, argue that the remand here was to resolve any issue not raised before the board. Instead, they propose an interpretation of the APA that would require the board to file its decisions with the court, not only in remands under § 84-917(5)(b)(i) for the resolution of other issues not raised before the board, but also in other remands under § 84-917(5)(a). However, such an interpretation is inconsistent with the structure and history of the statute.[15]

The filing requirements are located in § 84-917(5)(b), along with the provisions regarding remands for the resolution of other issues not raised before an agency. The provisions regarding other remands, in contrast, are in a separate subsection, § 84-917(5)(a). Indeed, prior to 2020, they were in their own section and not part of § 84-917(5) at all.[16] We find this structure to be indicative of the scope of the filing requirements

---

[13] See § 84-901(1). See, also, *Lingenfelter v. Lower Elkhorn NRD*, 294 Neb. 46, 881 N.W.2d 892 (2016).

[14] See § 46-750. See, also, *Medicine Creek v. Middle Republican NRD*, 296 Neb. 1, 892 N.W.2d 74 (2017).

[15] Cf., Daniel B. Listwa, Comment, *Uncovering the Codifier's Canon: How Codification Informs Interpretation*, 127 Yale L.J. 464 (2017) (role of section numbers adopted by legislators in statutory interpretation); Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 256 (2012) (role of "statutory history" in interpretation) (emphasis omitted).

[16] See 2020 Neb. Laws, L.B. 889, § 1.

and, in particular, their application only to remands for the resolution of other issues not raised before the agency.[17] We also observe that the Hauxwells' interpretation would render § 84-917(5)(b)(i) superfluous because there would be no need to discuss remands for the resolution of other issues not raised before the agency separately if all decisions on remand were required to be filed with the district court.[18]

Alternatively, the Hauxwells suggest that the remand in the matter of the 2020 findings and conclusions was for the resolution of other issues not raised before the board. The Hauxwells observe that the matter of the NRD's compliance with its own rules and regulations regarding the enforcement of violations was not raised at the 2020 hearing before the board. As such, the Hauxwells argue that the remand of the 2020 findings and conclusions was effectively a remand for the consideration of an issue not raised before the board. However, that argument ignores the plain language of the district court's order remanding the matter of the 2020 findings and conclusions. In that order, the court did not seek the NRD's views on any matter related to the NRD's compliance with its rules and regulations.[19] Instead, the court directed the NRD to give the Hauxwells a hearing that comported with specific due process requirements or dismiss the alleged violations.

---

[17] See, e.g., *Yates v. United States*, 574 U.S. 528, 540, 135 S. Ct. 1074, 191 L. Ed. 2d 64 (2015) (considering, among other things, "position" of section within relevant chapter and title of code in determining term's meaning); *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S. Ct. 1127, 71 L. Ed. 2d 234 (1982) (similar).

[18] See, e.g., *In re Guardianship of Patrick W.*, 316 Neb. 381, 4 N.W.3d 833 (2024).

[19] Cf. *Barrios v. Commissioner of Labor*, 25 Neb. App. 835, 914 N.W.2d 468 (2018) (remanding matter for consideration of whether agency was estopped from seeking reimbursement of benefits paid to plaintiff).

### (b) NRD Board's 2021 Order Was
### Not Final and Appealable

The NRD, in turn, challenges the district court's "exercising jurisdiction" over the board's 2021 findings and conclusions that the Hauxwells violated the NRD's rules and regulations and the NGWMPA. The NRD appears to base this argument solely on its view that the 2021 findings and conclusions were a final, appealable order, despite the district court's ruling to the contrary. As such, the NRD argues that the Hauxwells' failure to appeal the district court's decision regarding the 2021 findings and conclusions precludes the courts from reviewing the Hauxwells' "underlying violations" in conjunction with the present petition for review.[20] The Hauxwells counter that the 2021 findings and conclusions were not a final, appealable order because, among other things, they "did not dispose of the whole merits of the claim but instead left the determination of a penalty for further consideration."[21]

[10] For an appellate court to acquire jurisdiction of an appeal, the party must be appealing from a final order or a judgment.[22] Every direction of a court or judge, made or entered in writing and not included in a judgment, is an order.[23] A "final order" is defined by Neb. Rev. Stat. § 25-1902 (Cum. Supp. 2024) as (1) an order affecting a substantial right in an action, when such order in effect determines the action and prevents a judgment; (2) an order affecting a substantial right made during a special proceeding; (3) an order affecting a substantial right made on summary application in an action after a judgment is entered; and (4) an order denying a motion for summary judgment when such motion is based on the

---

[20] Brief for appellant at 25.

[21] Brief for appellees at 36.

[22] *Saint James Apt. Partners v. Universal Surety Co.*, 316 Neb. 419, 5 N.W.3d 179 (2024).

[23] *Id*. See, also, Neb. Rev. Stat. § 25-1301(1) (Cum. Supp. 2024) (defining "judgment" as "final determination" of parties' rights).

assertion of sovereign immunity or the immunity of a government official.[24]

[11,12] In particular, we have said that to be a final order under the first category of § 25-1902(1), the order must dispose of the whole merits of the case and leave nothing for the court's further consideration.[25] "Finality is central to our inquiry and serves 'the important purpose of promoting efficient judicial administration' and preventing 'piecemeal litigation.'"[26]

We agree with the Hauxwells that the board's 2021 findings and conclusions were not a final, appealable order as defined in § 25-1902. The parties do not suggest that a special proceeding, a summary application, or a motion for summary judgment based on the assertion of immunity was involved. Instead, they dispute whether the 2021 findings and conclusions determined the action.

Specifically, the NRD argues that the 2021 findings and conclusions determined the action because the Hauxwells were found to have violated the NRD's rules and regulations, and the board has discretion as to whether to impose penalties for violations. In other words, the NRD argues that because the matter could have ended with the finding of violations, the 2021 findings and conclusions were a final order. The Hauxwells disagree.

Given the specific language of the board's 2021 findings and conclusions, we find the NRD's arguments here to be untenable. Even if a board generally has discretion as to whether to impose penalties for violations, as the NRD claims, the board in this case expressly stated that penalties for the Hauxwells' violations would be considered "at a separate hearing" to be "scheduled in due course." In so doing, the board reserved an issue, an action that commentators have recognized "often prevents [an] order from being final and

---

[24] *Saint James Apt. Partners, supra* note 22.

[25] *Id*.

[26] *Id*. at 428, 5 N.W.3d at 189.

appealable."[27] As such, the 2021 findings and conclusions cannot be said to have "dispose[d] of the . . . merits of the case and [left] nothing" for the board's consideration.[28] To the contrary, insofar as penalties were not addressed in the 2021 findings and conclusions, the Hauxwells' ground water allocations remained unrestricted and the "status quo" was "preserv[ed]."[29]

We similarly reject the NRD's argument that even if the 2021 findings and conclusions were not a final order, it was still appealable under the NGWMPA. The NGWMPA permits "[a]ny person aggrieved by any order" of a natural resources district to appeal the order.[30] However, even assuming that we were to construe "any order" as broadly as the NRD suggests, the Hauxwells cannot be seen to have been "aggrieved" by the 2021 findings and conclusions that they violated the NRD's rules and regulations and the NGWMPA[31] so long as the penalty for those violations remained to be determined.

As we have explained, persons are "aggrieved" for purposes of the NGWMPA insofar as they have standing.[32] Common-law standing, in turn, generally focuses on whether the litigant has suffered or will suffer an injury in fact.[33] That injury must be concrete in both a qualitative and a temporal

---

[27] Daniel L. Real, Nebraska Appellate Practice and Procedure § 5:14 at 52 (2024).

[28] *Saint James Apt. Partners, supra* note 22, 316 Neb. at 428, 5 N.W.3d at 189. See, also, *Paxton v. Paxton*, 314 Neb. 197, 989 N.W.2d 420 (2023); *Ginger Cove Common Area Co. v. Wiekhorst*, 296 Neb. 416, 893 N.W.2d 467 (2017); *Selma Development v. Great Western Bank*, 285 Neb. 37, 825 N.W.2d 215 (2013).

[29] *Tilson v. Tilson*, 299 Neb. 64, 75, 907 N.W.2d 31, 38 (2018).

[30] § 46-750.

[31] See *id.*

[32] See, e.g., *Central Neb. Pub. Power Dist. v. North Platte NRD*, 280 Neb. 533, 788 N.W.2d 252 (2010).

[33] *In re Application A-19594*, 315 Neb. 311, 995 N.W.2d 655 (2023).

sense.[34] The complainant must allege an injury to itself that is distinct and palpable, as opposed to merely abstract, and the alleged harm must be actual or imminent, not conjectural or hypothetical.[35]

The alleged harm to the Hauxwells, however, is not actual or imminent. The NRD points to the fact that the Hauxwells were found to have violated the NRD's rules and regulations, even if no penalties were imposed. The NRD also argues that natural resources districts consider "[farmers'] history of compliance . . . when evaluating eligibility for other NRD programs" and "determining appropriate penalties for any future violations."[36] But those harms are conjectural or hypothetical.[37]

### (c) Ruggles Farms Was Hauxwells' Alter Ego

The NRD also argues that we lack jurisdiction to consider the "[a]ssessment of [v]iolations and [p]enalties" as to Ruggles Farms and properties owned by Ruggles Farms.[38] The NRD claims that Ruggles Farms was "named" as a "potential violator[]" in the 2021 complaint, that Ruggles Farms was "found" in 2021 to have violated the NRD's rules and regulations, that Ruggles Farms was "notified" of the 2022 hearing, and that the 2022 findings and conclusions "set forth penalties for violations" by Ruggles Farms.[39] As such, the NRD argues that because Ruggles Farms did not petition for review of the 2021 and 2022 findings and conclusions, the district court lacked jurisdiction over the penalties as to it. The Hauxwells take a different view, arguing that Ruggles Farms was "not

---

[34] *Id.*

[35] *Id.*

[36] Reply brief for appellants at 14.

[37] See, e.g., *In re Application A-18503*, 286 Neb. 611, 838 N.W.2d 242 (2013); *Frenchman-Cambridge Irr. Dist. v. Dept. of Nat. Res.*, 281 Neb. 992, 801 N.W.2d 253 (2011).

[38] Brief for appellants at 25.

[39] *Id.*

named as a party," but instead was treated as the Hauxwells' alter ego.[40]

An alter ego is "[a] corporation used by an individual or a subservient corporation in conducting personal business."[41] Generally, we have discussed alter egos in equitable actions seeking to "pierce the corporate veil" and impose liability on an individual or subservient corporation for alleged fraud, illegality, or injustice by the alter ego.[42] However, we have also recognized alter egos in other contexts.[43]

Based on the record on appeal, we agree with the Hauxwells that Ruggles Farms was treated as their alter ego in these proceedings. This is not to say that there are not factors that could be seen to support the view that Ruggles Farms was a separate party. Most notably, counsel for the Hauxwells entered an appearance on behalf of Ruggles Farms at the 2022 hearing. However, the record as a whole shows that Ruggles Farms was not treated as a separate party.

While the 2021 complaint was addressed to Ruggles Farms, as well as the Hauxwells, and included separate spaces for Bryan, Ami, and Ruggles Farms to sign the request for a hearing, it was otherwise directed to the Hauxwells. It began by advising the Hauxwells that they "both in [their] individual capacities and in [their] capacities as owners, members, and/or operators of Ruggles Farms" may have violated the NRD's rules and regulations and/or the NGWMPA. The complaint then noted multiple violations, none of which were alleged to have been committed by Ruggles Farms. Ruggles Farms was

---

[40] Brief for appellees at 13.

[41] Black's Law Dictionary 94 (10th ed. 2014).

[42] E.g., *407 N 117 Street v. Harper*, 314 Neb. 843, 852, 993 N.W.2d 462, 471 (2023). See, e.g., *Medlock v. Medlock*, 263 Neb. 666, 642 N.W.2d 113 (2002).

[43] See, e.g., *In re Adoption of Amea R.*, 282 Neb. 751, 807 N.W.2d 736 (2011); *Prochaska v. Douglas Cty.*, 260 Neb. 642, 619 N.W.2d 437 (2000); *Pratt v. Western Bridge & Construction Co.*, 116 Neb. 553, 218 N.W. 397 (1928).

not even mentioned in the letter that the NRD subsequently sent to the Hauxwells regarding the violation of the cease-and-desist order. Ruggles Farms did not appear personally or through an attorney at the 2021 hearing, and evidence at the 2021 hearing concerned violations on property *owned* by Ruggles Farms.

Similarly, as to the 2022 hearing, the notices referenced "Ruggles Farms, Inc./Bryan and Ami Hauxwell." This could be read to indicate violations by Ruggles Farms, as well as the Hauxwells. However, the forward slash between "Ruggles Farms, Inc." and "Bryan and Ami Hauxwell" could be equally understood to indicate the two were synonymous.

## 2. No Violation of Hauxwells' Due Process Rights

Having found that we have jurisdiction over the present matter, we next turn to the NRD's argument that the district court erred in finding that the Hauxwells' due process rights were violated because we find this argument to be dispositive. The NRD assigns other errors; however, an appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.[44]

The NRD argues that the record shows that its counsel and general manager participated in the board's deliberations after the 2020 hearing, and not after the 2021 hearing, as the district court stated. Accordingly, the NRD argues that the district court's conclusion that the 2022 hearing was tainted by this participation at the 2021 hearing was not supported by the record. The Hauxwells, on the other hand, argue that the district court's reference to the 2021 hearing was merely a typographical error and that the record supports the district court's finding that their due process rights were violated on this and other grounds.

---

[44] *Ronnfeldt Farms v. Arp*, 317 Neb. 690, 11 N.W.3d 371 (2024).

[13-17] A fair trial in a fair tribunal is a basic requirement of due process.[45] A party appearing in an adjudication hearing before an agency or tribunal is entitled to due process protections similar to those given litigants in a judicial proceeding; this includes the right to a hearing before an impartial, unbiased decisionmaker.[46] Rather than inquiring into whether the judge or adjudicator is actually, subjectively biased, the question is whether the average judge in his or her position is likely to be neutral, or whether there is an unconstitutional potential for bias.[47] Central to whether the average administrative decisionmaker in a similar position is likely to be neutral is the extent of separation between the investigative, prosecutorial, and adjudicative roles in the case.[48] In a criminal trial, due process requires the strict separation of investigative, prosecutorial, and adjudicative functions; in an administrative proceeding, due process requires an adequate separation of investigative, prosecutorial, and adjudicative roles.[49]

[18] Recently, in *Uhrich & Brown Ltd. Part. v. Middle Republican NRD*,[50] we addressed the combination of prosecutorial and adjudicative roles. There, the attorneys who prosecuted the cases against two landowners on behalf of a natural resources district were also "included in the decisionmaking process of the [b]oard to determine if those violations had been proved."[51] We agreed that this arrangement violated the landowners' due process rights.[52] In so finding, we recognized

---

[45] *Uhrich & Brown Ltd. Part., supra* note 6.

[46] *Id*.

[47] *Id*. See, also, *Williams v. Pennsylvania*, 579 U.S. 1, 136 S. Ct. 1899, 195 L. Ed. 2d 132 (2016); *Caperton v. A. T. Massey Coal Co.*, 556 U.S. 868, 129 S. Ct. 2252, 173 L. Ed. 2d 1208 (2009).

[48] *Uhrich & Brown Ltd. Part., supra* note 6.

[49] *Id*.

[50] *Id.*

[51] *Id*. at 615, 998 N.W.2d at 56.

[52] *Uhrich & Brown Ltd. Part., supra* note 6.

that decisionmakers are accorded a presumption of honesty and integrity, and of being qualified, unbiased, and unprejudiced; administrative adjudicators serve with the same presumption.[53] We also recognized that administrative procedures at the local level have "traditionally been relaxed" as a "natural consequence of limited resources in local government."[54]

[19,20] Nonetheless, we found that the differences between the prosecutorial and adjudicative roles were such that the probability of bias was too high to be constitutionally permissible under the circumstances.[55] We reasoned that an administrative prosecutor or advocate, by definition, is partisan for a particular client or point of view.[56] As such, we concluded that generally, the role of prosecutor is inconsistent with true objectivity, a constitutionally necessary characteristic of an adjudicator.[57] We therefore found that the NRD "no longer enjoyed the presumption of honesty and integrity."[58] We similarly found that notwithstanding the flexibility afforded to it, the NRD "crossed the line by having its attorneys participate in both the prosecution and adjudicatory process of the case."[59]

The parties here dispute the application of *Uhrich & Brown Ltd. Part.* Ultimately, we find that *Uhrich & Brown Ltd. Part.* is distinguishable because there, the same persons played both prosecutorial and adjudicatory roles at the same hearing where the challenged resolutions were made. Here, in contrast, the prosecutorial and adjudicatory roles were combined at a prior hearing. This distinction is determinative.

---

53 *Id.*

54 *Id*. at 606, 998 N.W.2d at 51, 52.

55 See *id*.

56 *Id*.

57 *Id.*

58 *Id*. at 615, 998 N.W.2d at 56.

59 *Id*. at 615, 998 N.W.2d at 57.

As other courts have found, the remedy for a violation of procedural due process in an administrative hearing is generally a new hearing.[60] However, the Hauxwells were effectively afforded a new hearing after the due process violation at issue. After the 2020 hearing where the NRD's counsel and general manager participated in the board's deliberations, the NRD filed a new complaint and subsequently held hearings on that complaint in 2021 and 2022. It is not alleged that the NRD's counsel or general manager participated in the deliberations at those later hearings.

Instead, the Hauxwells argue that a new hearing was insufficient to cure the due process violation because the new hearing involved the same violations and was heard by many of the same board members. The Hauxwells also point to emails that board members exchanged with the NRD's general manager prior to the 2020 hearing. The Hauxwells claim that those emails show that the board was biased against them. Collectively, these arguments amount to a claim that the board members had prejudged the matter. But, as commentators have noted, prejudgment challenges "rarely succeed."[61]

For example, in *Trade Comm'n v. Cement Institute*,[62] the U.S. Supreme Court rejected a company's claim that the Federal Trade Commission (the Commission) had prejudged the issues, was prejudiced and biased against the industry, and would not give a fair hearing to the industry generally and the company

---

[60] See, e.g., *624 Broadway, LLC v. Gary Housing Authority*, 193 N.E.3d 381 (Ind. 2022); *State ex rel. Womack v. Sloan*, 2017 Ohio 8708, 152 Ohio St. 3d 32, 92 N.E.3d 836 (2017); *Hanig v. City of Winner*, 692 N.W.2d 202 (S.D. 2005); *Hartland Sportsmen's Club v. Delafield*, 393 Wis. 2d 496, 947 N.W.2d 214 (Wis. App. 2020); *Hall v. Superior Court*, 3 Cal. App. 5th 792, 208 Cal. Rptr. 3d 186 (2016); *Dept. of Highway and Motor Veh. v. Corcoran*, 133 So. 3d 616 (Fla. App. 2014).

[61] 2 Charles H. Koch, Jr., Administrative Law and Practice § 6:10 at 358 (3d ed. 2010).

[62] *Trade Comm'n v. Cement Institute*, 333 U.S. 683, 68 S. Ct. 793, 92 L. Ed. 1010 (1948).

in particular. The company pointed to the fact that before the operative complaint was filed, members of the Commission had issued reports and testified to Congress that the industry engaged in unlawful practices.[63] The company maintained that as a result of those statements, the Commission should have been disqualified from hearing the complaint against it.[64] The Court disagreed.

The Court reasoned that "the fact that the Commission had [previously] entertained such views . . . did not necessarily mean that the minds of its members were irrevocably closed on the subject."[65] The Court also reasoned that "[h]ad the entire membership of the Commission [been] disqualified in the proceedings against these respondents, [the] complaint could not have been acted upon by the Commission or by any other government agency."[66] The Court found that such an outcome would "to a large extent defeat" Congress' purpose in creating the Commission.[67] The Court further observed that Congress had made no provision for such contingency.[68] "It [had] not directed that the Commission disqualify itself under any circumstances," provided for substitute commissioners, or authorized another government agency to hold hearings, make findings, and issue cease-and-desist orders in these matters.[69]

Subsequently, in *Pangburn v. C. A. B.*,[70] the U.S. Court of Appeals for the First Circuit took a similar view in a case where a board that regulated aviation services was alleged to have prejudged "a concrete and specific factual determination." In that case, a pilot challenged the board's order finding

---

[63] *Id.*

[64] *Id.*

[65] *Id.*, 333 U.S. at 701.

[66] *Id.*

[67] *Id.*

[68] *Id.*

[69] *Id.*

[70] *Pangburn v. C. A. B.*, 311 F.2d 349, 356 (1st Cir. 1962).

that the pilot's negligence caused a crash and imposing pen-
alties.[71] The pilot argued that his due process rights had been
violated because prior to issuing the order, the board had
issued a public report fixing pilot error as the cause of the
crash.[72] The pilot claimed that the report's issuance had pre-
cluded him from obtaining an impartial tribunal.[73]

The appellate court rejected this claim. In so doing, the
court pointed to an earlier situation where the conclusion
that the board reached regarding a pilot was contrary to the
conclusion the board had previously reached in its accident
report, with the apparent implication that this showed that
adjudicators' minds are not irrevocably closed.[74] The court also
reasoned that the board would be unable to fulfill its statutory
duties to adjudicate pilots' cases and prepare accident reports
under the pilot's theory.[75] As such, the court concluded that
"the mere fact that a tribunal has had contact with a particular
factual complex in a prior hearing, or indeed has taken a public
position on the facts," was not "enough to place that tribunal
under a constitutional inhibition to pass upon the facts in a
subsequent hearing."[76] Instead, "more is required."[77]

Under the reasoning of *Cement Institute* and *Pangburn*, the
Hauxwells' due process rights cannot be seen to have been
violated here. The Hauxwells' argument to the contrary is
ultimately that the board members' minds were "irrevocably
closed" because of their prior comments and counsel's par-
ticipation in the board's deliberations after the 2020 hearing.
However, as explained in *Cement Institute* and illustrated in
*Pangburn*, this view is untenable, particularly in light of the

---

[71] *Pangburn, supra* note 70.

[72] *Id.*

[73] *Id.*

[74] *Id.*

[75] *Id.*

[76] *Id.* at 358.

[77] *Id.*

presumption of honesty and integrity afforded to decision-makers.[78] We also observe that like in *Cement Institute* and *Pangburn*, the board in this case would have been disqualified from performing its statutory duties under the Hauxwells' theory.[79] At the hearing, the Hauxwells admitted to violations of the NRD's rules and regulations and the NGWMPA, although they disputed whether the violations were knowing and willful. The NGWMPA tasks natural resources districts with enforcing such violations.[80] And as the NRD argues, there are no provisions for the board to "delegat[e] [its] responsibilities to another panel or to other individuals."[81]

Because we disagree with the district court that the Hauxwells' due process rights were violated under the facts and circumstances of this case, we reverse the district court's order and remand the cause to the district court with directions to rule on the other claims in the Hauxwells' petition for review. The district court indicated that it had reviewed those claims de novo on the record but that it addressed only the Hauxwells' due process claim because it found that claim to be dispositive.

In reversing and remanding, we are cognizant of the Hauxwells' argument that we could affirm the district court's order based on other alleged violations of their due process

---

[78] See, e.g., *United States v. Morgan*, 313 U.S. 409, 421, 61 S. Ct. 999 85 L. Ed. 1429 (1941) (adjudicators "assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances").

[79] Cf., *United States v. Will*, 449 U.S. 200, 101 S. Ct. 471, 66 L. Ed. 2d 392 (1980) (common-law "Rule of Necessity," under which judge—even though he or she has interest in case—has duty to hear and decide case if it cannot otherwise be heard, prevails over disqualification standards); *Brinkley v. Hassig*, 83 F.2d 351, 357 (10th Cir. 1936) ("disqualification will not be permitted to destroy the only tribunal with power in the premises").

[80] See, e.g., § 46-707(1)(h) (issuance of cease-and-desist orders); § 46-746 (imposition of penalties).

[81] Reply brief for appellants at 13.

rights. An appellate court has the discretion to affirm, as it deems appropriate, a correct result that was reached below for the wrong reason.[82] However, in our discretion, we find it better to have the district court rule on the Hauxwells' alternative arguments in the first instance, and we express no view on the merits of those arguments at this time.

## VI. CONCLUSION

The parties' challenges to our jurisdiction are without merit. However, the district court incorrectly found that the violation of the Hauxwells' due process rights at a prior hearing before the NRD board tainted the subsequent hearings. Accordingly, we reverse the order of the district court and remand the cause to the district court with directions as set forth above.

REVERSED AND REMANDED WITH DIRECTIONS.

---

[82] *State v. Jones*, 317 Neb. 559, 10 N.W.3d 747 (2024).