Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/06/2025 09:08 AM CDT

MEGAN E. HAWK, APPELLANT, V.
DAVID P. HAWK, APPELLEE.

___ N.W.3d ___

Filed June 6, 2025.    No. S-24-754.

1. **Divorce: Appeal and Error.** In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge.

2. **Judges: Words and Phrases.** A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

3. **Divorce: Judgments: Appeal and Error.** The meaning of a divorce decree presents a question of law, in connection with which an appellate court reaches a conclusion independent of the determination reached by the court below.

4. **Statutes.** Statutory interpretation presents a question of law.

5. **Motions to Vacate: Time: Appeal and Error.** A court has inherent power to vacate or modify its own judgments at any time during the term in which those judgments are pronounced, and a decision to vacate will be reversed only if the district court abused its discretion.

6. **Constitutional Law: Courts: Jurisdiction.** Under article V of the Nebraska Constitution, the district court is a court of general jurisdiction of this state, which is divided into judicial districts for the transaction of judicial business.

7. **Motions to Vacate: Time.** Neb. Rev. Stat. § 25-2001(1) (Reissue 2016) empowers a district court to exercise its inherent power to vacate or modify its judgments or orders after the end of the term, upon the same grounds, upon a motion filed within 6 months after the entry of the judgment or order.

8. **Statutes.** Statutory interpretation begins with the text, and the text is to be given its plain and ordinary meaning.

9. **Motions to Vacate: Time.** The rights of a party seeking relief under Neb. Rev. Stat. § 25-2001(1) (Reissue 2016) become fixed at the time the motion is filed, and not at the time of the disposition of the motion, even if that is after the expiration of the 6-month period following the entry of the judgment or order.

10. **Motions to Vacate.** Where a district court properly exercises the power to vacate or modify its judgments or orders based upon Neb. Rev. Stat. § 25-2001(1) (Reissue 2016), its power to do so is not affected by the absence of the grounds listed in § 25-2001(4).

11. **Judgments.** The proper function of a nunc pro tunc order is not to correct, change, or modify some affirmative action previously taken. Rather, its purpose is to correct the record which has been made so that it will truly record the action taken, which, through inadvertence or mistake, has not been truly recorded.

12. **Pleadings.** When the title of a filing does not reflect its substance, it is proper for a court to treat a pleading or motion based on its substance rather than its title.

13. **Property Division: Interest: Appeal and Error.** Nebraska's statute providing for interest on judgments does not require interest to be charged on a marital deferred property distribution. However, it is within the discretionary power of the district court to award interest on deferred installments payable as part of a marital property distribution, and those decisions will be upheld absent an abuse of discretion.

14. **Courts: Jurisdiction.** A court that has jurisdiction to make a decision also has the power to enforce it by making such orders as are necessary to carry its judgment or decree into effect.

15. **Courts: Records.** A clerk of the district court is required to keep records, to be maintained on the court's electronic case management system, including a financial record and a judgment index.

16. **Courts.** Under Neb. Rev. Stat. § 25-2214 (Reissue 2016), in the performance of the duties of the clerk of the district court, the clerk shall be under the direction of his or her court.

17. **Courts: Court Rules.** Neither Neb. Rev. Stat. § 25-2214 (Reissue 2016) nor the rules of a court are sufficient to confer judicial powers upon a clerk.

Appeal from the District Court for Douglas County: Tressa M. Alioth, Judge. Affirmed.

John W. Ballew, Jr., of Ballew Hazen Byrd, P.C., L.L.O., for appellant.

Kathryn D. Putnam, of Astley Putnam, P.C., L.L.O., for appellee.

FUNKE, C.J., MILLER-LERMAN, CASSEL, STACY, PAPIK, FREUDENBERG, and BERGEVIN, JJ.

CASSEL, J.

## INTRODUCTION

Megan E. Hawk appeals from an order modifying the interest payable under the decree dissolving her marriage to David P. Hawk. It was entered after the court's term ended and was based upon a motion filed within 6 months from the entry of the decree. Because the statutory extension of the court's inherent power[1] was timely invoked, it had the discretion to do so. Finding no abuse of that discretion, we affirm.

## BACKGROUND

Because this appeal focuses on David's obligation to pay interest on the monetary equalization payment ordered in the divorce decree, we quote the pertinent language from the decree and subsequent orders. Dates matter in this appeal; thus, we recite the history in chronological order.

The events straddle the end of the court's term. By rule, the regular term of court of the district court for Douglas County begins on July 1 of each calendar year and ends on June 30 of the following calendar year.[2]

### PROCEEDINGS PRIOR TO END OF TERM

On February 20, 2024, the district court entered its decree dissolving the parties' marriage. It ordered David to pay a cash equalization payment of nearly $3 million in "8 annual installments." It specified that David was required to "pay $375,000 per year in years 1-7, and the balance owed, plus

---

[1] See Neb. Rev. Stat. § 25-2001(1) (Reissue 2016).

[2] See Rules of Dist. Ct. of Fourth Jud. Dist. 4-1(C) (rev. 2022). See, also, Neb. Rev. Stat. § 24-301.02 (Cum. Supp. 2024) ("District No. 4 shall contain the county of Douglas").

accrued interest, shall be due in year 8." Each payment was to be "paid by July 1ˢᵗ of each year." It then stated, "For example, the first payment shall be due July 1, 2024." The payment provision continued, "Interest on the unpaid balance shall accrue judgment interest at a rate of 7.264% per annum for 8 consecutive years. There shall be no prepayment penalty for any early or additional payments made by [David]." For enforcement purposes, the decree characterized this as a "monetary judgment."

In addition, the court awarded Megan substantial items of property in kind, as well as alimony payable for 48 months. The alimony was to begin on the first day of the first month following the entry of the decree. The monthly amount of alimony began at $7,500 per month for the first year, dropped to $6,500 per month in the second year, then to $5,500 per month in the third year, and finally to $4,500 per month in the fourth year.

Six days after the entry of the decree, Megan filed a motion to alter or amend it. She asserted that the decree's language "postponed [her] receipt of the interest on the money judgment until after year 8."

On April 4, 2024, the court modified the language. We recite only the language that differed, which stated as follows:

> The property judgment shall be paid in eight (8) annual installments as follows:
>
>> Payment 1: July 1, 2024-$375,000 plus accrued interest;
>> Payment 2: July 1, 2025-$375,000 plus accrued interest;
>> Payment 3: July 1, 2026-$375,000 plus accrued interest;
>> Payment 4: July 1, 2027-$375,000 plus accrued interest;
>> Payment 5: July 1, 2028-$375,000 plus accrued interest;
>> Payment 6: July 1, 2029-$375,000 plus accrued interest;
>> Payment 7: July 1, 2030-$375,000 plus accrued interest;
>> Payment 8: July 1, 2031-All remaining sums owed plus
> accrued interest.
>
> Interest on the unpaid balance shall accrue judgment interest at a rate of 7.264% per annum.

The sentence eliminating any prepayment penalty was repeated without change. The April 4 order stated that it was prepared and submitted by David's counsel and that its form and content was approved by Megan's counsel. The order suggested that the court held a hearing before entering it. A subsequent order states that no record was made of the hearing.

The parties agree that no appeal was taken from the April 4, 2024, order. In other words, neither party appealed from the decree, as it had been modified, prior to the end of the district court's term.

## PROCEEDINGS AFTER END OF TERM

The district court's term ended on June 30, 2024. A new term began on the next day.

On July 29, 2024, Megan filed a motion requesting the court to "enter an Order Nunc Pro Tunc clarifying that the money judgment is to be made payable through the [court clerk] and attaching an amortization schedule showing principal and interest to be paid under the terms of the court's orders." Megan asserted the court's failure to provide that the payments be made through the registry of the court clerk was an "oversight" and that "[a]dditionally, there was no amortization schedule showing the proper amounts of principal and interest" due over the 8-year period under the terms of the decree.

The court held a hearing, during which Megan's counsel acknowledged that the request "isn't really the subject of an order nunc pro tunc. . . . This is to actually enter the judgment, implement it, and have the interest schedule set up on the [c]ourt's books. And I think that goes beyond what an order nunc pro tunc was."

At the hearing, David's counsel responded, in part, that there was confusion regarding the calculation of accrued interest. She understood that the court clerk had "calculated the interest back to the date the first payment was due" and indicated Megan's counsel believed that it should have been calculated "back to the date the decree was entered." David's

counsel asked for clarification, noting that she had "seen it both ways." David's counsel also challenged the notion that an amortization schedule was necessary when the decree "specifically says there is no penalty for prepayment."

David testified that he had been unable to make the payment due on July 1, 2024, because the court clerk had not yet recorded the money judgment in the electronic case management system. An exhibit showed that he made a payment on July 26 in the amount of $376,865.75. After hearing David's testimony, the court "believe[d] . . . that [the judgment in the electronic case management system is] not calculated correctly, [and] that there does need to be an implementation of a judgment."

During the hearing, the court also stated that its "intent was that . . . interest would start the day that the first payment was due and proceed there, and it should be paid to the Clerk of the District Court." In response to a question posed by Megan's counsel whether there was to be no interest accrual between February and July 2024, the court said, "Right. Because I ordered that the first payment be made, and if [David] prepaid it, thinking that if he prepaid all of it, then there wouldn't be any interest where I said there would be no prepayment penalty. So interest will start as of the first date . . . ."

On September 20, 2024, the court entered an order, styled as an "Order on Motion Nunc Pro Tunc," which stated that it was prepared by David's counsel. The opening paragraph referred to "[Megan's] Motion for Order Nunc Pro Tunc," and the next paragraph said, "[Megan's] Motion to Alter or Amend is denied in part and granted in part as follows . . . ." To the extent that its language varied from the decree and the earlier order modifying the decree, it stated:

The property judgment shall be paid in eight (8) annual installments as follows:

Payment 1: July 1, 2024-$375,000 shall be due;

. . . .

Interest on the unpaid balance shall accrue judgment interest at a rate of 7.264% per annum and **interest shall begin to accrue on the full balance of the judgment on July 1, 2024 when the first payment becomes due and owing.** Interest shall accrue on the full balance owed commencing July 1, 2024.

(Emphasis in original.)

The order expounded directions to the clerk of the district court in three respects. First, it instructed the clerk that the equalization payment "shall be recorded as a judgment . . . owed by [David]." Second, it required all payments to be "made through" the clerk. Finally, in denying Megan's request to include a fixed amortization schedule, the court directed the clerk to "calculate[]" "the balance owed and interest."

On September 23, 2024, Megan filed a motion for reconsideration. The court overruled the motion on October 2.

On October 8, 2024, Megan filed an appeal to the Nebraska Court of Appeals. We then moved the appeal to our docket.[3]

## ASSIGNMENTS OF ERROR

Megan assigns two errors. We understand one to assert that the district court erred in modifying its judgment after the end of the court's term in the absence of any of the grounds provided in § 25-2001(4). The other one states that the court erred in "changing the commencement date of interest accrual on a final judgment in the context of a Motion for Order Nunc Pro Tunc."

## STANDARD OF REVIEW

[1,2] In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge.[4] A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a

---

[3] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2024).

[4] *Seemann v. Seemann*, 318 Neb. 643, 18 N.W.3d 118 (2025).

litigant of a substantial right and denying just results in matters submitted for disposition.[5]

[3,4] The meaning of a divorce decree presents a question of law, in connection with which an appellate court reaches a conclusion independent of the determination reached by the court below.[6] Likewise, statutory interpretation presents a question of law.[7]

[5] A court has inherent power to vacate or modify its own judgments at any time during the term in which those judgments are pronounced, and a decision to modify will be reversed only if the district court abused its discretion.[8]

## ANALYSIS

This appeal centers upon the district court's authority to further modify the decree after June 30, 2024, when the court's term ended. Generally, our cases have identified four sources of power to modify a judgment: one founded purely on the court's inherent power,[9] two having statutory bases,[10] and one grounded in the power of a court of equity.[11] Our decision here touches on three of them.

### Statute Extended District Court's Inherent Power to Modify

At least as early as 1899, we recognized that courts of general jurisdiction possess inherent power to vacate and modify their own judgments at any time during the term at which they were pronounced.[12] In that decision, we noted that this

---

[5] *Paw K. v. Christian G.*, 315 Neb. 781, 1 N.W.3d 467 (2024).

[6] *Mackiewicz v. Mackiewicz*, 313 Neb. 281, 984 N.W.2d 253 (2023).

[7] *Syring v. Archdiocese of Omaha*, 317 Neb. 195, 9 N.W.3d 445 (2024).

[8] See *Johnson v. Antoniutti*, 318 Neb. 465, 16 N.W.3d 864 (2025).

[9] See, e.g., *id.*

[10] See § 25-2001(1) and (4).

[11] See, e.g., *Joyce v. Joyce*, 229 Neb. 831, 429 N.W.2d 355 (1988).

[12] *Bradley v. Slater*, 58 Neb. 554, 78 N.W. 1069 (1899).

power existed entirely independent of any statute, that it was derived from the common law, and that the provisions of the Code of Civil Procedure relating to new trials did not assume to abolish or abridge it.[13]

[6] That inherent power endures,[14] and it applies to the district court here. Under article V of the Nebraska Constitution, the district court is a court of general jurisdiction of this state, which is divided into judicial districts for the transaction of judicial business.[15] As a court of general jurisdiction, the district court for Douglas County possesses the inherent power of modification within term.[16]

Megan contends that after the court's term expired, it lacked jurisdiction to modify its judgment. She reasons that none of the grounds in § 25-2001(4) applied. Before 2000, we applied similar reasoning.[17]

[7] But an amendment in 2000 extended the court's inherent power.[18] Section 25-2001(1) empowers a district court to exercise its inherent power to vacate or modify its judgments or orders after the end of the term, upon the same grounds, upon a motion filed within 6 months after the entry of the judgment or order.

Megan's motion timely sought the exercise of this power. Whether measured from the entry of the decree on February 20, 2024, or from the entry of the order on April 4 partially granting Megan's motion to alter or amend the decree, 6 months had not yet elapsed when Megan filed her motion on July 29.

---

[13] See *id.*

[14] See *Johnson v. Antoniutti, supra* note 8.

[15] See *State v. Jones*, 317 Neb. 559, 10 N.W.3d 747 (2024).

[16] See Neb. Rev. Stat. § 24-302 (Reissue 2016) (district courts have general, original, and appellate jurisdiction).

[17] See, e.g., *Andersen v. American Family Mut. Ins. Co.*, 249 Neb. 169, 542 N.W.2d 703 (1996).

[18] See 2000 Neb. Laws, L.B. 921, § 17.

We next consider whether the power was exercised timely. Under the former law, the rights of a party seeking relief became fixed at the time the motion was filed during term, and not at the time of the disposition of the motion, even if that was in a subsequent term.[19] In other words, a motion filed before the end of term could be decided in the next term.

[8,9] Although we have not said so previously, the language of § 25-2001(1) leads us to a similar conclusion. Statutory interpretation begins with the text, and the text is to be given its plain and ordinary meaning.[20] Here, the plain language permits the inherent power to be "exercised after the end of the term . . . upon a motion *filed within six months after the entry of the judgment or order*."[21] We hold that the rights of a party seeking relief under § 25-2001(1) become fixed at the time the motion is filed, and not at the time of the disposition of the motion, even if that is after the expiration of the 6-month period following the entry of the judgment or order. The filing of Megan's July 2024 motion empowered the district court to exercise its inherent power, as extended by statute, in the new term.

[10] We need not consider whether Megan is correct in contending that none of the reasons specified by § 25-2001(4) exist. Where a district court properly exercises the power to vacate or modify its judgments or orders based upon § 25-2001(1), its power to do so is not affected by the absence of the grounds listed in § 25-2001(4).

### CONTEXT WAS SUBSTANTIVE AMENDMENT AND NOT NUNC PRO TUNC

[11] Had the district court characterized its actual relief as nunc pro tunc, it would have been erroneous. The proper function of a nunc pro tunc order is not to correct, change, or

---

[19] See *Moackler v. Finley*, 207 Neb. 353, 299 N.W.2d 166 (1980).

[20] *In re Estate of McCormick*, 317 Neb. 960, 12 N.W.3d 802 (2024).

[21] § 25-2001(1) (emphasis supplied).

modify some affirmative action previously taken. Rather, its purpose is to correct the record which has been made so that it will truly record the action taken, which, through inadvertence or mistake, has not been truly recorded.[22] Here, the relief sought was a substantive alteration of the judgment.

But we are not persuaded that the court treated its relief as an order nunc pro tunc. Megan titled her motion as "Motion for Order Nunc Pro Tunc." The court did employ Megan's wording to caption its order and identify Megan's motion. But in the court's substantive relief, it characterized the motion as "[Megan's] Motion to Alter or Amend" and stated that it "amended" the court's earlier language.

[12] When the title of a filing does not reflect its substance, it is proper for a court to treat a pleading or motion based on its substance rather than its title.[23] As noted above, Megan's counsel stated that the motion "isn't really the subject of an order nunc pro tunc." The court correctly treated it as a request for substantive amendment. Because the court did so, and was empowered to do so by § 25-2001(1), Megan's assignment of error regarding the motion's "context" lacks merit.

We urge the bar and trial bench to refrain from improperly labeling substantive modifications as motions or orders nunc pro tunc. In § 25-2001(1), the Legislature provided a powerful tool for trial courts to cure substantive problems within a window of at least 6 months. Orders nunc pro tunc should be used only for the purpose that our cases have long identified.

## COURT'S INTEREST DETERMINATION
### WAS NOT ABUSE OF DISCRETION

As part of Megan's arguments regarding her assigned errors, she urges that it was inequitable for the court not to award interest between the entry of the decree in February 2024 and the accrual of the first payment in July. David argues otherwise.

---

[22] *In re Interest of Luz P. et al.*, 295 Neb. 814, 891 N.W.2d 651 (2017).

[23] *In re Interest of Jordon B.*, 316 Neb. 974, 7 N.W.3d 894 (2024).

[13] The parties seem to agree upon the applicable law. Nebraska's statute providing for interest on judgments[24] does not require interest to be charged on a marital deferred property distribution. However, it is within the discretionary power of the district court to award interest on deferred installments payable as part of a marital property distribution, and those decisions will be upheld absent an abuse of discretion.[25]

The district court reasoned that its payment plan would encourage David to prepay the deferred amounts in order to avoid the necessity of paying interest. In light of the decree's provisions for alimony payments and division of property and debts, we cannot say that this constituted an abuse of discretion.

[14-17] We do not read the court's directions to the court clerk as a delegation of any judicial authority or power to determine the correct amount of the judgment. A court that has jurisdiction to make a decision also has the power to enforce it by making such orders as are necessary to carry its judgment or decree into effect.[26] A clerk of the district court is required to keep records, to be maintained on the court's electronic case management system, including a financial record and a judgment index.[27] Financial record means the financial accounting of the court, including the recording of all money receipted and disbursed by the court.[28] Judgment index means the alphabetical listing of all judgment debtors and judgment creditors.[29] Under Neb. Rev. Stat. § 25-2214 (Reissue 2016), in the performance of the duties of the clerk of the district court, the clerk "shall be under the direction of his [or her] court." Neither that statute nor the rules of a court

---

[24] See Neb. Rev. Stat. § 45-103 (Reissue 2021).

[25] *Priest v. Priest*, 251 Neb. 76, 554 N.W.2d 792 (1996).

[26] *Johnson v. Johnson*, 308 Neb. 623, 956 N.W.2d 261 (2021).

[27] See Neb. Rev. Stat. § 25-2209(1) (Cum. Supp. 2024).

[28] See § 25-2209(3)(a). See, also, Neb. Ct. R. § 6-1523(E) (rev. 2022).

[29] § 25-2209(3)(d). See, also, Neb. Ct. R. § 6-1523(G).

are sufficient to confer judicial powers upon a clerk.[30] Should a dispute arise regarding the proper calculation of interest on a judgment, the resolution of that dispute is a judicial function and not a ministerial function.[31]

## CONCLUSION

As explained above, we conclude the following:

• Section 25-2001(1) empowers a district court to exercise its inherent power to vacate or modify its judgments or orders after the end of the term, upon the same grounds, upon a motion filed within 6 months after the entry of the judgment or order.

• The rights of a party seeking relief under § 25-2001(1) become fixed at the time the motion is filed, and not at the time of the disposition of the motion, even if that is after the expiration of the 6-month period following the entry of the judgment or order.

• Where a district court properly exercises the power to vacate or modify its judgments or orders based upon § 25-2001(1), its power to do so is not affected by the absence of the grounds listed in § 25-2001(4).

We have reviewed the district court's exercise of its inherent power to modify its judgment within term, as extended by § 25-2001(1), for abuse of discretion, and we find none. We therefore affirm the order of the district court modifying the decree regarding the payment of interest on the deferred installments payable as part of a marital property distribution.

AFFIRMED.

---

[30] *Building Systems, Inc. v. Medical Center, Ltd.*, 228 Neb. 168, 421 N.W.2d 773 (1988).

[31] See 49 C.J.S. *Judgments* § 377 (2021) (judgment may be amended to correct clerical mistakes regarding interest recoverable but not affecting substance of judgment).