IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

HOHENSTEIN V. HOHENSTEIN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

DOUGLAS W. HOHENSTEIN ET AL., INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF
COTTONWOOD FLATS, INC., A NEBRASKA CORPORATION, APPELLEES,

V.

KURT HOHENSTEIN, INDIVIDUALLY AND AS DIRECTOR AND OFFICER OF COTTONWOOD FLATS, INC.,
APPELLANT, AND

LILLIAN HOHENSTEIN, INDIVIDUALLY AND AS TRUSTEE OF THE WILLIAM AND LILLIAN
HOHENSTEIN TRUST AND FAMILY TRUST, AND AS DIRECTOR AND OFFICER OF COTTONWOOD
FLATS, INC., APPELLEE.

Filed October 21, 2025.    No. A-24-798.

Appeal from the District Court for Dakota County: BRYAN C. MEISMER, Judge. Affirmed.

Kurt A. Hohenstein, pro se.

Andrew T. Schlosser and Susan J. Spahn, of Fitzgerald, Schorr, Barmettler & Brennan, P.C., L.L.O., for appellees.

RIEDMANN, Chief Judge, and MOORE and WELCH, Judges.

MOORE, Judge.

## I. INTRODUCTION

Kurt Hohenstein, self-represented, appeals from the October 2024 order of the district court for Dakota County, which denied his motion to alter or amend. Kurt assigns errors relating to the court's August 2024 order in aid of execution, which enforced certain portions of the judgment

- 1 -

entered in the underlying litigation in this ongoing dispute among family members. For the reasons set forth herein, we affirm.

## II. STATEMENT OF FACTS

### 1. PRIOR HISTORY AND RELATED PROCEEDINGS

Portions of the facts and procedural history of this case have been set forth in two previous appeals in the underlying litigation, as well as in the appeals in related cases. See *Hohenstein v. Hohenstein*, No. A-22-108, 2023 WL 5217713 (Neb. App. Aug. 15, 2023) (selected for posting to court website) (*Hohenstein I*) (appeal from final order in underlying litigation). See, also, *Hohenstein v. Hohenstein*, No. A-22-278, 2023 WL 5919731 (Neb. App. Sept. 12, 2023) (selected for posting to court website) (*Hohenstein II*) (tort case); *Hohenstein v. Hohenstein*, No. A-23-1057, 2024 WL 4601638 (Neb. App. Oct. 29, 2024) (selected for posting to court website) (*Hohenstein III*) (appeal concerning attorney fee allocation after remand in underlying litigation); *Cottonwood Flats v. Hohenstein*, No. A-24-526, 2025 WL 1565077 (Neb. App. June 3, 2025) (selected for posting to court website) (*Hohenstein IV)* (eviction case). Here, we have summarized only the facts necessary to provide context for the present appeal.

### (a) Appeal in Underlying Litigation

As we noted in *Hohenstein III*:

The original complaint in this case was filed in 2013 and involved claims arising out of a dispute among Kurt and some of his siblings with respect to various agreements and interests in the family farm, which had previously been incorporated by their parents as Cottonwood Flats, Inc. The three siblings who filed suit in 2013 (the plaintiffs) were each shareholders in Cottonwood Flats, as was Kurt, who is a defendant in the litigation. Kurt's mother, in various capacities, was also named as a defendant; she died before trial, and the case against her was revived against Kurt as special administrator of her estate. Two of the plaintiffs died before entry of the final order at issue in [*Hohenstein I*]; the case was revived in the names of their surviving spouses as personal representatives. The plaintiffs filed an amended complaint in 2014, both individually, and derivatively on behalf of Cottonwood Flats. The claims asserted by the parties fall broadly into two categories, those relating to the shareholder derivative action and those relating to the administration of certain trusts.

*Hohenstein III, supra*, 2024 WL 4601638 at *1.

The components of the judgment entered in the underlying litigation were spread out over several orders, all of which were incorporated into the final order appealed from and affirmed in *Hohenstein I*. We have previously referred to those key orders as the February 2019 order following trial, the May 2019 order granting the plaintiffs' motion to alter or amend, the May 2020 order regarding attorney fees, and the January 2022 final order. See *Hohenstein I*. As summarized, the final judgment in the underlying litigation consisted of the following: (1) the requirement that Kurt make certain transfers of Cottonwood Flats stock (296 shares to the Hohenstein Family Trust (Family Trust) and a total of 379.4 shares to Cottonwood Flats), (2) judgment for $273,596.80 against Kurt as successor trustee of the Family Trust in favor of Cottonwood Flats in the trust side of the case, (3) judgment totaling $833,485.45 against Kurt, personally, in favor of Cottonwood

Flats in the shareholder derivative action (the corporate side of the case), and (4) judgment for attorney fees and costs totaling $413,059.04 against Kurt, personally, and Kurt as special administrator of his mother's estate, jointly and severally.

### (b) Appeal After Remand Concerning Attorney Fee Allocation

On October 27, 2023, the district court entered judgment on the mandate in *Hohenstein I*. It also entered an order (the October 2023 order on remand) addressing the directions from this court in *Hohenstein I*, which led to additional proceedings concerning allocation of the attorney fees awarded in the underlying litigation and culminated in the December 2023 order from which Kurt appealed in *Hohenstein III*. The December 2023 order was entered after the order appealed from in the present appeal, but we briefly recite our decision in *Hohenstein III* to provide further context for the status of the attorney fee award in the underlying litigation. We also note that discussion between the court and the plaintiffs' attorney at the July 2024 hearing indicates that Kurt did not file a supersedeas with respect to the attorney fee allocation appeal. See *Production Credit Assn. of the Midlands v. Schmer*, 233 Neb. 785, 448 N.W.2d 141 (1989) (in absence of supersedeas, judgment or final order retains its vitality and is capable of being executed during pendency of appeal). See, also Neb. Rev. Stat. § 25-1916 (Reissue 2016).

In *Hohenstein III*, we found that the district court acted within its discretion to allocate $143,525.42 of the plaintiffs' attorney fee award to the trust side of the case and $269,533.62 to the corporate side of the case. The amount of the plaintiffs' attorney fee award allocated to the corporate side of the case was to be paid by Cottonwood Flats as allowed by Neb. Rev. Stat. § 21-2076(1) (Reissue 2012). However, the December 2023 judgment for payment of the plaintiffs' attorney fees allocated to the trust side of the case used language inconsistent with the court's prior attorney fee judgments, and in entering judgment in that way, the court acted outside the scope of remand. See *TransCanada Keystone Pipeline v. Tanderup*, 305 Neb. 493, 941 N.W.2d 145 (2020) (because trial court is without power to affect rights and duties outside scope of remand from appellate court, any order attempting to do so is entered without jurisdiction and is void). Specifically, we found that by entering judgement for fees in the trust portion of the case against Kurt individually, the court inadvertently altered the previous finding that fees under Neb. Rev. Stat. § 30-3893 (Reissue 2016) (award of attorney fees in proceedings involving administration of trust) should be paid jointly and severally by both defendants, i.e., Kurt individually and Kurt as special administrator of his mother's estate. Accordingly, we vacated for lack of jurisdiction and set aside that portion of the court's December 2023 order stating that the attorney fees allocated to the trust side of the case should be paid by Kurt Hohenstein, individually, and we remanded with directions to enter judgment for attorney fees and costs in the trust portion of the case in conformity with our opinion. See *Hohenstein III*.

The present appeal relates to proceedings the plaintiffs initiated after the entry of judgment on the mandate in *Hohenstein I*, in which they sought to enforce various components of the judgment in the underlying litigation. We describe those proceedings below. Before doing so, however, we note that an order, judgment, or proceeding dependent on, or ancillary and accessory to, a judgment, order, or decree that is reversed shares its fate and falls with it. *Gary's Implement v. Bridgeport Tractor Parts*, 270 Neb. 337, 701 N.W.2d 367 (2005). See, also, *Cattle Nat. Bank & Trust Co. v. Watson*, 293 Neb. 943, 880 N.W.2d 906 (2016) (garnishment in aid of execution

issued before judgment is without jurisdiction and void, and not merely irregular; execution issued without judgment to support it is void); 30 Am. Jur. 2d *Executions* § 57 (2017) (general rule is that execution may not issue upon void judgment). Our decision in *Hohenstein III* did not affect the underlying judgment for attorney fees and costs totaling $413,059.04 entered against Kurt, personally, and Kurt as special administrator of his mother's estate, jointly and severally. Nor did it affect the allocation of $143,525.42 of the awarded amount to the trust side of the case. As such, our decision in *Hohenstein III* does not prevent enforcement of that component of the judgment in the underlying litigation.

### 2. POST-MANDATE ENFORCEMENT OF JUDGMENT PROCEEDINGS

#### (a) Enforcement of Stock Transfers

On November 15, 2023, the plaintiffs filed a motion for post-appeal orders, seeking to effectuate the judgment affirmed by this court in *Hohenstein I*. In their motion, they noted the relief awarded in the underlying litigation, including the requirement that Kurt make certain transfers of Cottonwood Flats stock to Cottonwood Flats and to the Family Trust. They also noted that on February 15, 2022, in connection with his appeal in *Hohenstein I*, Kurt filed with the district court a submission of stock transfer agreement (STA) as condition of supersedeas bond and notice on money judgment, which included copies of the STA and supersedeas bond. The plaintiffs alleged that pursuant to the STA, if this court affirmed the order requiring transfer of the stock (which we did), the STA "would permit the transfer of the shares to the [Family] Trust or to Cottonwood Flats, 'without any further action by any party.'" Finally, the plaintiffs noted Neb. Rev. Stat. § 25-1573 (Reissue 2016) (judge may appoint sheriff or other suitable person as receiver of debtor's property and may forbid transfer or disposition of debtor's property or interference therewith) and Neb. Rev. Stat. § 25-1582 (Reissue 2016) (judgment not for money or real property may be enforced by attachment).

The plaintiffs asked the district court to declare and confirm that, pursuant to the STA, 379.4 shares of Cottonwood Flats stock had transferred from Kurt to Cottonwood Flats and were now owned by Cottonwood Flats, and 296 shares of Cottonwood Flats stock had transferred from Kurt to the current trustee of the Family Trust and were now owned by the trustee of the Family Trust. And, they asked the court, to the extent it determined the stock had not automatically transferred pursuant to the STA, to direct the sheriff of Dakota County to attach all shares to be transferred pursuant to the court's judgment in the underlying litigation and to deliver the shares as designated in the judgment. Finally, they asked the court to prohibit the transfer, disposition, or interference with any shares of Cottonwood Flats stock owned or held by Kurt; to appoint the sheriff or other suitable person as receiver of all shares owned by Kurt individually, with directions to hold such shares until further order of the court; and to award such other relief as may be appropriate. The motion included a notice of telephonic hearing set for November 17, 2023, and the certificate of service shows that it was served on Kurt by email. Kurt did not appear for the November 17 hearing.

On November 17, 2023, following the hearing on the plaintiffs' motion, the district court entered an order for post-appeal relief (the November 2023 order for post-appeal relief). It found that, pursuant to the STA (and this court's decision in *Hohenstein I*), 379.4 shares of Cottonwood Flats stock had transferred from Kurt to Cottonwood Flats; that 296 shares had transferred from

Kurt to the current trustee of the Family Trust; and that the shares were now owned by Cottonwood Flats and the trustee, respectively. The court deemed the transfers to have occurred on October 27, 2023, the date it entered judgment on the mandate in *Hohenstein I*. The court also prohibited Kurt from transferring, disposing, or interfering with any remaining shares owned or held by him until further order of the court, and appointed the sheriff as receiver of all such shares with direction to collect and hold any physical stock certificates representing such shares until further order of the court.

On November 28, 2023, Kurt filed an objection to the district court's November 2023 order for post-appeal relief and a request for reconsideration. In his objection, Kurt noted, among other things, that the court had granted the request of the attorney representing the successor trustee of the Family Trust to withdraw in early November and that the Family Trust was currently unrepresented. He also described certain medical treatment he received, beginning in mid-October 2023, and his hospitalization from November 10-15. Kurt then essentially alleged that his due process rights had been violated by the granting of the order for post-appeal relief, and he asked the court to set aside the order.

Kurt appeared for the December 12, 2023, hearing on his objection, and on December 29, the district court entered an order denying Kurt's request for reconsideration of the November 2023 order for post-appeal relief. The court observed that this case, along with a companion case, was "called" over several successive weeks in November and that "all parties" were given the date and time for the November 17 hearing in open court after having had an opportunity to confirm that that date and time would work. The court then noted that the plaintiffs' motion for post-appeal orders was filed on November 15. The court stated that "[u]nder normal circumstances," it would agree with Kurt that 2 days' notice was not sufficient for a party to make itself available and prepared for a hearing, but here, where all parties had acknowledged the court date in advance, the court was "less sympathetic" to Kurt's argument. The court stated, "At the very least, [Kurt] could have reached out to counsel or the [c]ourt regarding his unavailability on the 17th, and the [c]ourt would absolutely have granted more time." Upon its review of the pleadings and evidence presented, the court denied Kurt's request for reconsideration.

(b) Enforcement of Money Judgment in Trust Side of Case

Pursuant to "paragraph C" of the relief granted section of the February 2019 order following trial, Kurt, as successor trustee of the Family Trust, was required to pay Cottonwood Flats $273,596.80 plus post-judgment interest (accruing from the date of the January 2022 final order).

On March 21, 2024, the plaintiffs filed an affidavit and praecipe for summons in garnishment (in aid of execution), stating in the affidavit that the plaintiffs as creditors had recovered judgment against Kurt as successor trustee of the Family Trust, and that the total amount due was $336,943.11 ($273,596.80 judgment, plus interest of $63,346.31). The garnishee identified in the affidavit as having property of and being indebted to "the judgment debtor" was a company located in Lincoln, Nebraska. Pursuant to the plaintiffs' praecipe, the clerk of the court issued a summons and garnishment in aid of execution by certified mail. The service return filed on May 6 indicated that the summons in garnishment was "[r]eturned unserved at option of Plaintiffs/Judgment Creditors."

- 5 -

On July 11, 2024, the plaintiffs filed a partial satisfaction of judgment, acknowledging receipt by Cottonwood Flats of the sum of $283,300.23 from court-appointed special fiduciaries acting in place of Kurt as successor trustee of the Family Trust. This filing then states:

> In recognition that said payment represented all the remaining assets of such trust and in further recognition that the balance remaining due from the [s]uccessor [t]rustee on behalf of such trust is less than $4,000.00, the [p]laintiffs and Cottonwood Flats . . . have agreed to waive the remaining judgment balance awarded under paragraph C of the Relief Granted section of [the February 2019 order following trial,] as incorporated in [the January 2022 final order.]
>
> Accordingly, that portion of the judgment awarded in paragraph C of the Relief Granted section of [the February 2019 order following trial,] as incorporated in [the January 2022 final order], in the amount of $273,596.80 against Kurt Hohenstein, Successor Trustee of the [Family Trust], in favor of Cottonwood Flats . . . including interest and costs, has been fully and completely satisfied and Kurt Hohenstein, individually and as Successor Trustee of the Hohenstein Family Trust, and the court-appointed Special Fiduciaries acting in his place, are hereby released from any further obligation on such portion of the judgment.

The plaintiffs concluded by noting that the partial satisfaction of judgment was limited to "paragraph C" of the relief granted section of the February 2019 order following trial, as incorporated in the January 2022 final order, and "shall not release any other part" of the judgment granted in the underlying litigation or "in any other order" of the district court.

### (c) Enforcement of Money Judgment in Corporate Side of Case and Attorney Fee Award Allocated to Trust Side of Case

As noted above, the district court entered judgement in the underlying litigation totaling $833,485.45 against Kurt, personally, in favor of Cottonwood Flats in the corporate derivative action; and for attorney fees and costs totaling $413,059.04 ($143,525.42 allocated to trust side of case and $269,533.62 allocated to corporate side of case) against Kurt, personally, and Kurt as special administrator of his mother's estate, jointly and severally. See *Hohenstein I; Hohenstein III*.

On July 11, 2024, the plaintiffs filed a motion for order in aid of execution, in which they sought to execute on Kurt's shares of Cottonwood Flats stock to satisfy "the judgment against Kurt Hohenstein previously entered." Namely, they sought to enforce the money judgment entered against Kurt in favor of Cottonwood Flats in the derivative action and the portion of the attorney fee award allocated to the trust side of the case. In their motion, the plaintiffs acknowledged that the allocation of the attorney fee award in the December 2023 order was then on appeal, but they alleged that because Kurt had not sought or provided a supersedeas bond relating to the pending attorney fee appeal, that judgment remained subject to execution. The plaintiffs noted that they were also filing an affidavit and praecipe for summons in garnishment verifying that as of July 11, "Kurt Hohenstein" still owed $876,678.72 to Cottonwood Flats (judgment plus interest) and $143,525.42 in attorney fees "to the [p]laintiffs individually." They stated that Cottonwood Flats was "anticipated to respond" to garnishment interrogatories prior to the hearing on the motion,

verifying that Kurt currently owned 141 of the 565.6 outstanding shares of Cottonwood Flats stock (representing 24.93% of the company). The plaintiffs stated that they only sought to recover the shares necessary to satisfy the judgment balances as of July 11 and would separately seek recovery of additional interest accruing after that date. The plaintiffs set forth their calculations as to how many of Kurt's shares would need to be transferred to satisfy the components of the underlying judgment addressed in their motion and the effect of those transfers on the value of Cottonwood Flats. The plaintiffs then asked the court to enter an order (1) finding that 70 shares of Cottonwood Flats stock should immediately transfer from Kurt to Cottonwood Flats (to satisfy the money judgment in the derivative action) and (2) finding that ownership of 11.5 shares of Cottonwood Flats stock should immediately transfer "from Kurt Hohenstein to Plaintiffs individually, to be allocated among them as they may agree or, upon failure to agree within 30 days, to be divided among the three Plaintiffs equally" (to satisfy attorney fees allocated to the trust portion of the case). The plaintiffs' motion included a notice of hearing for a telephonic hearing set for July 30. Kurt did not appear for the July 30 hearing.

On July 11, 2024, the plaintiffs also filed an affidavit and praecipe for summons in garnishment (in aid of execution), stating in the affidavit that the plaintiffs as creditors had recovered judgment against the debtor, "Kurt Hohenstein," and that the total amount due was "$833,485.45 plus $43,193.27 interest, $143,525.42 attorney fees, and $0.00 costs, for a total of $1,020,204.14." The garnishee identified in the affidavit as having property of and being indebted to "the judgment debtor," was Cottonwood Flats. The praecipe attached to this affidavit instructed the clerk of the court to issue a summons in garnishment upon Cottonwood Flats by certified mail. There are no further garnishment related documents in the record on appeal.

On August 6, 2024, the district court entered an order in aid of execution. The court granted the plaintiffs' motion and found that 70 shares of Cottonwood Flats stock should immediately transfer from Kurt to Cottonwood Flats and ownership of 11.5 shares should immediately transfer from "Kurt Hohenstein to the group of three Plaintiffs, individually," to be allocated among them as they agreed or divided among them equally if they failed to agree within 30 days. The court also found that "the parties having authority over Cottonwood Flats" should take such action as necessary to reflect these transfers on the stock ledger and other applicable records of Cottonwood Flats.

Kurt filed a motion to alter or amend the district court's order in aid of execution, which was heard by the court on October 2, 2024. In his motion, Kurt asked the court to amend or alter its order to find that the plaintiffs had sought relief contrary to the interests of Cottonwood Flats and that in doing so, the plaintiffs violated the standing requirement for derivative proceedings found in Neb. Rev. Stat. § 21-276 (Reissue 2016). He asked the court to dismiss the plaintiffs for lack of standing, subject to the appointment of "other suitable plaintiffs that have standing to continue to act on behalf of the corporation, if such shareholders exist," or to "dismiss the case for failure of subject matter jurisdiction." On October 17, the district court entered an order denying Kurt's motion to alter or amend. Kurt subsequently perfected the present appeal to this court.

### III. ASSIGNMENTS OF ERROR

Kurt's brief on appeal contains five assigned errors. As in *Hohenstein III*, some of his assigned errors are convoluted and difficult to follow, but, consolidated and restated, he generally

asserts that the district court (1) lacked subject matter jurisdiction over these post-judgment enforcement proceedings because Cottonwood Flats was the real party in interest and an indispensable party (his first and second assigned errors), (2) erred in permitting the plaintiffs to proceed with a garnishment action when they failed to comply with statutory notice requirements, (3) erred in failing to dismiss the plaintiffs from this action on the basis that they lacked standing, and (4) erred in relying on false statements by plaintiffs' counsel.

An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting error. *Larson v. Larson*, 33 Neb. App. 609, 23 N.W.3d 670 (2025). We note that Kurt's amorphous arguments in support of each assigned error are not necessarily confined to their respective sections of his brief on appeal, but we have considered all his arguments in support of each assigned error. Some of Kurt's arguments appear to relate to matters not presently before this court. To the extent that he specifically argues matters not specifically assigned, we have not considered those arguments.

## IV. STANDARD OF REVIEW

A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent of the lower court's decision. *Hauxwell v. Middle Republican NRD*, 319 Neb. 28, 21 N.W.3d 21 (2025).

Appellate review of a district court's use of inherent power is for an abuse of discretion. *Carrizales v. Creighton St. Joseph*, 312 Neb. 296, 979 N.W.2d 81 (2022). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Bajjuri v. Karney*, 319 Neb. 273, 21 N.W.3d 605 (2025).

Statutory interpretation is a question of law that an appellate court resolves independently of the trial court. *Dugan v. Sorensen*, 319 Neb. 326, 22 N.W.3d 623 (2025).

## V. ANALYSIS

### 1. STATUS OF COTTONWOOD FLATS

In his first two assigned errors, Kurt essentially alleges that Cottonwood Flats as judgment creditor was the real party in interest and an indispensable party to these proceedings to collect the money judgment entered in its favor in the stockholder derivative action, and by implication, that the absence of Cottonwood Flats as a party deprived both the district court and this court of jurisdiction in the enforcement proceedings. See *Midwest Renewable Energy v. American Engr. Testing*, 296 Neb. 73, 894 N.W.2d 221 (2017) (absence of indispensable party to controversy deprives court of subject matter jurisdiction to determine controversy and cannot be waived); *Hauxwell v. Middle Republican NRD*, 319 Neb. 1, 21 N.W.3d 34 (2025) (where lower court lacks subject matter jurisdiction to adjudicate merits of claim, issue, or question, appellate court also lacks power to determine merits of claim, issue, or question presented to lower court).

To the extent that Kurt is, yet again, attempting to relitigate the issue of whether Cottonwood Flats should have been included as a party in the underlying litigation, we addressed that issue in *Hohenstein I*, where we rejected Kurt's argument that the plaintiffs were required to join Cottonwood Flats as a party in the derivative action. That determination is the law-of-the-case,

and we rejected Kurt's attempt to relitigate that issue in *Hohenstein III*. Likewise, we reject any attempt to relitigate that issue in the present appeal. See *In re Estate of Adelung*, 312 Neb. 647, 980 N.W.2d 415 (2022) (law-of-the-case doctrine reflects principle that issue litigated and decided in one stage of case should not be relitigated at later stage).

(a) First Assigned Error

In arguing his first assigned error, Kurt attempts to reframe the issue of Cottonwood Flats' status as an indispensable party in the derivative proceedings in such a way as to avoid the law-of-the-case doctrine. We reject his arguments.

First, Kurt notes that a derivative action is a suit brought by a shareholder to enforce a cause of action belonging to the corporation. Clearly, the shareholder derivative action added to the underlying litigation in 2014 was filed by three of Kurt's siblings derivatively on behalf of Cottonwood Flats. While the various orders comprising the final judgment in the underlying litigation state that judgment in that portion of the case was entered "in favor of Cottonwood Flats," we read this as a shorthand way of saying that judgment in the corporate side of the case was awarded to the plaintiffs derivatively on behalf of Cottonwood Flats and as an acknowledgment that a derivative action is a suit brought by a shareholder to enforce a cause of action belonging to the corporation. *McGill v. Lion Place Condo. Assn.*, 291 Neb. 70, 864 N.W.2d 642 (2015). See, also, Neb. Rev. Stat. § 21-2070 (Reissue 2012) (derivative proceeding shall mean civil suit or action in right of domestic corporation). We agree with Kurt's assertion that the plaintiffs had no right personally to the judgment entered by the district court in favor of Cottonwood Flats in the shareholder derivative action.

Kurt alludes to "confusion about which party has the right to collect the debt" based on alleged misstatements of fact in some of the plaintiffs' filings in the enforcement proceedings. Brief for appellant at 24. We have discussed Kurt's allegations about certain statements made in the plaintiffs' filings below in connection with his fifth assignment of error, but for purposes of his first assigned error, we see nothing in those filings to indicate that the plaintiffs were attempting to collect the money judgment awarded in the derivative action individually rather than derivatively on behalf of Cottonwood Flats. The plaintiffs' motion for order in aid of execution sought the transfer of 70 shares of Kurt's Cottonwood Flats stock in payment of the money judgment owed to Cottonwood Flats. The court granted that motion and ordered the transfer of those shares to Cottonwood Flats; it did not transfer the 70 shares to the plaintiffs, individually.

Next, Kurt cites *American Nat. Bank v. Medved*, 281 Neb. 799, 801 N.W.2d 230 (2011) for the proposition that when a cause of action for the recovery of money damages is merged in a valid and final judgment in favor of the plaintiff, the cause of action is extinguished and a new cause of action on the judgment is created. He then argues that that is what happened here. In other words, he argues that the shareholder derivative action ended with entry of the final judgment appealed from in *Hohenstein I* and that "the matter of collecting the judgment, here following the garnishment statutes, was a new cause of action," or essentially a new case requiring the plaintiffs to name Cottonwood Flats as an indispensable party to the post-judgment enforcement proceedings.

Kurt misreads this proposition from *American Nat. Bank v. Medved, supra*. Further clarification is found in *Nelssen v. Ritchie*, 304 Neb. 346, 934 N.W.2d 377 (2019), where the

Nebraska Supreme Court quoted from comment *a.* to the Restatement (Second) of Judgments § 18 (1982). Section 18 provides:

> When a valid and final personal judgment is rendered in favor of the plaintiff:
>
> (1) The plaintiff cannot thereafter maintain an action on the original claim or any part thereof, although he may be able to maintain an action upon the judgment; and
>
> (2) In an action upon the judgment, the defendant cannot avail himself of defenses he might have interposed, or did interpose, in the first action.

Comment *a.* then sets forth the doctrine of merger, which provides that "[w]hen the plaintiff recovers a valid and final personal judgment, his original claim is extinguished and rights upon the judgment are substituted for it. The plaintiff's original claim is said to be 'merged' in the judgment." *Id.*, § 18, comment *a.* at 152. We also note comment *c.*, which provides that "[a] judgment for the plaintiff awarding him a sum of money creates a debt in that amount in his favor. He may maintain proceedings by way of execution for enforcement of the judgment. He may also be able to maintain an action upon the judgment." *Id.*, § 18, comment *c.* at 154.

Here, the plaintiffs in their various capacities obtained judgment in the underlying litigation against the defendants in their various capacities. Their original claims were merged into that judgment. In filing their motion in aid of execution, the plaintiffs sought to enforce certain components of that judgment. We see nothing in Kurt's arguments that would require the plaintiffs to name Cottonwood Flats as an indispensable party in the proceedings to enforce the judgment in the underlying litigation, especially in light of our decisions in *Hohenstein I* and *Hohenstein III*. If the plaintiffs had filed a new lawsuit, initiating an action upon the judgment obtained in the underlying litigation, our conclusion might be different, but that is not what happened here. This assignment of error fails.

### (b) Second Assigned Error

The actual wording of Kurt's second assigned error is as follows: "In a garnishment proceeding the judgment creditor is an indispensable party to the action. Failure to include the party denies the court of subject matter jurisdiction in the case and the court erred in finding it had jurisdiction to determine the collection matter." Brief for appellant at 12. We have already addressed Kurt's arguments that the plaintiffs were required to name Cottonwood Flats as a party in the enforcement proceedings and decline to address that issue further in connection with his second assignment of error. The balance of his arguments concern the plaintiffs' alleged failures to comply with garnishment statutes and are more properly addressed in connection with Kurt's third assigned error.

### 2. COMPLIANCE WITH GARNISHMENT STATUTES

Kurt asserts that the district court erred in permitting the plaintiffs to proceed with a garnishment action when they failed to comply with statutory notice requirements. He argues that the plaintiffs failed to comply with the requirements of various garnishment statutes, repeats his assertion that Cottonwood Flats was an indispensable party to these proceedings, and concludes by asserting that "[t]he lack of subject matter jurisdiction here makes the entire proceeding void and of no effect." Brief for appellant at 32.

At this point, we note that there are various methods by which plaintiffs generally may enforce a monetary judgment entered in their favor. "The enforcement of a judgment for the payment of money is usually by the process of execution but may include attachment, garnishment, and supplementary proceedings. Actions may also be brought on judgments, domestic and foreign." 50 C.J.S. *Judgments* § 911 (2021). Generally, executions and garnishments in aid of executions are mechanisms by which a judgment creditor can seek judicial enforcement of a monetary judgment—usually by seizing and selling the judgment debtor's property. *Florence Lake Investments v. Berg*, 312 Neb. 183, 978 N.W.2d 308 (2022). See, Neb. Rev. Stat. § 25-1056 (Reissue 2016) (when judgment has been entered and creditor has filed affidavit, garnishment summons shall issue); Neb. Rev. Stat. § 25-1501.01 (Reissue 2016) (person having judgment rendered by district court may request clerk of court to issue execution). See, also, § 25-1582 (in aid of execution of judgment, court may order property of judgment debtor, not exempt by law, in hands of either himself or other person or corporation, or due to judgment debtor, to be applied towards satisfaction of judgment).

Here, the plaintiffs initiated garnishment proceedings, but they did not continue to pursue enforcement of the money judgment in the derivative action and the attorney fees apportioned to the trust side of the case by way of garnishment beyond the garnishment affidavit and praecipe they filed on July 11, 2024. They also sought enforcement of these portions of the judgment in the underlying litigation by filing a motion for order in aid of execution as allowed under § 25-1582, and the August 2024 order in aid of execution appealed from contains the district court's ruling on that motion. We note that Kurt does not actually assign any error to the transfers of Cottonwood Flats stock ordered in the August 2024 order. Although the plaintiffs refer to some of their garnishment filings in their motion for order in aid of execution, we see nothing in § 25-1582 requiring the plaintiffs to continue to pursue garnishment as a means of enforcement to obtain an order in aid of execution. The plaintiffs note that in addition to employing its statutory power under § 25-1582 to enter the August 2024 order, the enforcement remedy ordered by the court was also within its inherent power. We agree. A court that has jurisdiction to make a decision also has the power to enforce it by making such orders as are necessary to carry its judgment or decree into effect. See *Hawk v. Hawk*, 319 Neb. 120, 21 N.W.3d 303 (2025). As we determined in *Hohenstein I, Hohenstein III*, and elsewhere in this opinion, the court had and continues to have jurisdiction over this case. And, because a determination of whether the plaintiffs complied with all requirements of the garnishment statutes is not necessary to a resolution of this appeal, we decline to consider Kurt's arguments on that issue further. See *In re Estate of Harchelroad*, 318 Neb. 573, 18 N.W.3d 103 (2025) (appellate court is not obligated to engage in analysis that is not needed to adjudicate controversy before it).

### 3. STATUS OF PLAINTIFFS

Kurt asserts that the district court erred in failing to dismiss the plaintiffs from this action on the basis that they lacked standing. More specifically, he asserts that the plaintiffs lost their standing as derivative plaintiffs acting on behalf of Cottonwood Flats because the method for enforcing the money judgment in the derivative action that they proposed in their motion for order in aid of execution did not benefit Cottonwood Flats.

- 11 -

Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court. *State ex rel. Hilgers v. Evnen*, 318 Neb. 803, 19 N.W.3d 244 (2025). A party has standing to invoke a court's jurisdiction if it has a legal or equitable right, title, or interest in the subject matter of the controversy. *Zeiler v. Reifschneider*, 315 Neb. 880, 1 N.W.3d 880 (2024). To commence or maintain a derivative proceeding, a party must be a shareholder, and that party must adequately represent the interests of the corporation in enforcing the right of the corporation. See, *Ferer v. Erickson, Sederstrom*, 272 Neb. 113, 718 N.W.2d 501 (2006); § 21-276.

Whether a plaintiff fairly and adequately represents other shareholders and the corporation involves a factual determination by the court, and the burden of proof is on the party challenging the plaintiff's standing. *Ferer v. Sederstrom, supra*. The derivative plaintiff is not required to prove that he or she is the proper representative of the shareholders. *Id.*

The Nebraska Supreme Court has stated that a determination of adequate representation of other shareholders and the corporation depends on two factors: (1) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the litigation, and (2) the plaintiff must not have interests antagonistic to those of the class or the corporation. See *Ferer v. Sederstrom, supra*. A plaintiff in a shareholder derivative action owes the corporation his or her undivided loyalty. *Id.* The plaintiff must not have ulterior motives and must not be pursuing an external personal agenda. *Id.* See, also, 13 William Meade Fletcher, Fletcher Cyclopedia of the Law of Corporations § 5981.41 (2008) (discussing factors in determining whether derivative plaintiffs fairly and adequately represent interests of similarly situated shareholders and corporation).

Kurt raised the issue of the plaintiffs' continued standing in his August 2024 motion to alter or amend. Kurt has not challenged the qualifications of the plaintiffs' attorneys, alleging instead that the plaintiffs' interests are antagonistic to those of Cottonwood Flats. In support of his arguments, Kurt relies on what he has described in his fourth assignment of error as the plaintiffs' proposal of "a scheme that satisfied a judgment owned by the corporation in return for the delivery of stock of no value to the corporation, which enriched the plaintiffs individually." Brief for appellant at 11. Essentially, he argues that because the plaintiffs proposed a collection plan that will reduce the value of Cottonwood Flats and increase the plaintiffs' percentage of ownership in Cottonwood Flats, the plaintiffs are no longer fairly and adequately representing the corporation and have thus lost their standing as derivative plaintiffs.

In their motion for order in aid of execution, the plaintiffs set forth an explanation of how they calculated the number of shares of Cottonwood Flats stock the district court would need to transfer to satisfy the money judgment in the derivative action and the portion of the attorney fee judgment allocated to the trust side of the case. Given the detailed nature of this explanation, we have set it forth in its entirety. Their calculations are based on the assertion that Kurt currently owned 141 of the outstanding shares of Cottonwood Flats stock and the "other shareholders combined" owned a total of 424.6 shares. With respect to the money judgment owed to Cottonwood Flats, the plaintiffs stated:

> 9. Cottonwood Flats engaged [an accounting firm] to conduct an updated valuation of its assets and liabilities to determine the company's value for purposes of executing on [Kurt's] shares of Cottonwood Flats stock. [The firm] issued its report on May 7, 2024,

and found the total net value of Cottonwood Flats as of December 31, 2023, was $7,085,830.

10. As shares transfer from [Kurt] to Cottonwood Flats in payment of the judgment owed, such shares become treasury stock on the books of the company and are no longer considered issued or outstanding shares. See Neb. Rev. Stat. § 21-251 [(Reissue 2016)]. Thus, the total number of outstanding shares of stock of Cottonwood Flats will be reduced as the judgment is paid. Additionally, the total value of the company will be reduced because the judgment balance shown as an asset on the company's balance sheet will be reduced to zero.

11. Upon transfer of the shares for payment of the judgment, the total value of Cottonwood Flats and the value of [Kurt's] interest should thus each be reduced by the current judgment balance of $876,679. The other shareholders' total share value and number of shares will stay the same since their shares do not change hands, but their percentage of ownership will change due to the reduced number of outstanding shares.

12. Using [the accounting firm's] valuation, [Kurt's] pre-execution ownership of 24.93% of the company is worth $1,766,497. After subtracting the balance due to Cottonwood Flats of $876,679 [for the money judgment in the derivative action], [Kurt's] remaining ownership value should be reduced to $889,818. Upon subtraction of the same amount from the company value, the total value of Cottonwood Flats would be reduced to $6,209,151. [Kurt] would thus have 14.33% of the company post-execution and the other shareholders would have the remaining 85.67%.

13. Setting the other shareholders' existing 424.6 shares equal to 85.67% of the total shares results in Cottonwood Flats having total outstanding shares post-execution of 495.6 shares. Consequently, [Kurt's] remaining 14.33% equates to 71.0 shares, meaning a total of 70.0 shares need to be transferred from [Kurt] to Cottonwood Flats for payment of the judgment.

As to the attorney fees allocated to the trust side of the case, the plaintiffs stated:

15. As noted above, [Kurt] owes [the p]laintiffs, individually, attorney fees of $143,525 [as apportioned to the trust side of the case].

16. Transferring shares from [Kurt] to [the p]laintiffs does not change the value of Cottonwood Flats nor does it alter the total number of outstanding shares so a per-share value can be used.

17. As calculated above, following execution on the judgment owed to Cottonwood Flats, the total value of Cottonwood Flats will be $6,209,151 with a total of 495.6 shares outstanding. Each share is thus worth $12,529.

18. To equal the amount of the attorney fee judgment, a total of 11.5 shares will need to be transferred from [Kurt] to the [p]laintiffs. As calculated above, [Kurt] will have 71.0 shares remaining after payment of the balance due to Cottonwood Flats. After subtracting the additional 11.5 shares, [Kurt] will have 59.5 shares.

An appendix with a summary of the above values and calculations was attached to the motion.

The final order in the underlying litigation was entered in January 2022. As of July 11, 2024, when the plaintiffs filed their motion for order in aid of execution, the portions of the judgment addressed by their motion had still not been paid. We make no comment on the specific manner in which the debt was satisfied, given the protracted nature of the underlying litigation and the numerous related cases generated by the parties, and an assessment of the corporation's interests for purposes of determining the plaintiffs' continued standing under § 21-276 involved more than a calculation of the effect of their collection plan on Cottonwood Flats' overall valuation. Kurt's arguments on appeal do not show that he carried his burden of proof in challenging the plaintiffs' standing. See *Ferer v. Erickson, Sederstrom*, 272 Neb. 113, 718 N.W.2d 501 (2006). The district court did not err in denying his motion to alter or amend. Kurt's other arguments in this section of his brief relate to matters other than his assigned error, and we decline to address them. This assignment of error fails.

### 4. ALLEGED FALSE STATEMENTS BY PLAINTIFFS' COUNSEL

Kurt's fifth assignment of error is as follows:
When plaintiffs' counsel makes a false statement of fact or law to the court, or fails to correct a false statement of fact or law previously made to the court by such lawyer, that constitutes a lack of candor to the tribunal. The court has a duty to consider the proper course of action to remedy the wrong done to the other party and to the integrity of the adjudicative process.

Brief for appellant at 13. In support of this assigned error, Kurt argues, "It should be obvious that in these proceedings, plaintiffs' counsel has misled the court, through its pleadings, affidavits and statements made in open court," and he points to certain allegedly misleading statements. Brief for appellant at 35.

We have reviewed the statements identified by Kurt, and while some may be less than artfully worded, we disagree that the statements are false, misleading, or rise to the level of any ethical violation by the plaintiffs' attorneys. Kurt does not point to any request to the district court and a failure by the court to act with respect to these alleged misstatements. Kurt essentially rehashes his arguments about the plaintiffs' alleged failures to comply with certain garnishment statutes, refers to alleged actions of opposing counsel in cases not presently before this court, and again attacks the collection plan proposed by the plaintiffs in the motion for order in aid of execution. He also repeats jurisdictional arguments that we have addressed above. We decline to address those issues further in connection with Kurt's fifth assignment of error.

A generalized and vague assignment of error that does not advise an appellate court of the issue submitted for decision will not be considered. *Trieweiler v. Sears*, 268 Neb. 952, 689 N.W.2d 807 (2004). As noted above, we disagree with Kurt's assertions about the nature of the statements identified in this section of his brief. Beyond reframing his arguments in support of his other assigned errors as alleged ethical violations by the plaintiffs' attorneys, the arguments in this section of his brief do little to provide specific information about how the district court erred below. Conclusory assertions unsupported by coherent analytical argument fail to satisfy the requirement that an appellant's brief must both specifically assign and specifically argue errors. See *132*

- 14 -

*Ventures v. Active Spine Physical Therapy*, 318 Neb. 64, 13 N.W.3d 441 (2024). This assignment of error fails.

## VI. CONCLUSION

Finding no error, we affirm the district court's August 2024 order in aid of execution enforcing the above-described portions of the judgment entered in the underlying litigation in this case. We also affirm the court's October 2024 order denying Kurt's motion to alter or amend.

AFFIRMED.